(No. 14231.—Judgment reversed.)

LILLIAN H. KELLER, Admx. Appellant, *vs.* THE NORTH AMERICAN LIFE INSURANCE COMPANY, Appellee.

*Opinion filed December 22, 1921—Rehearing denied Feb. 10, 1922.*

1. DEBTOR AND CREDITOR—*giving of a note does not extinguish debt in absence of agreement.* A note given by a debtor for a precedent debt will not be held to extinguish the debt in the absence of an agreement to that effect, as a mere promise to pay can not, of itself, be regarded as an effective payment, but the note will be considered as conditional payment or as collateral security or as an acknowledgment or memorandum of the amount ascertained to be due.

2. INSURANCE—*when notes given for life insurance premiums are not accepted as payment.* Where life insurance policies are in force only two years, and the insured, after failing to pay his third annual premiums, makes application to have the policies re-instated, the action of the company in re-instating the insurance upon payment of one-fourth of the premiums in cash and the giving of notes for the balance does not amount to an express agreement to receive the notes as absolute payment of the premiums, where the notes and the receipts both state that the notes are accepted with the understanding that "all benefits whatever which payment in cash of said premium would have secured shall become immediately void" if the notes are not paid at maturity.

3. SAME—*when notes and receipts given for premiums must be construed with insurance contract.* Paragraph 3 of section 1 of the act of 1907, (Laws of 1907, p. 367,) providing that a life insurance policy and the application therefor shall constitute the entire contract between the parties, does not prevent the making of an agreement for re-instatement extending the time for the payment of the premiums and setting forward the time of forfeiture, and in such case the notes given in part payment of the lapsed premiums, and the receipts therefor, must be construed with the application for re-instatement and with the insurance contract.

4. SAME—*when insured is not entitled to loan or extended insurance under paragraphs 6 and 7 of section 1 of act of 1907.* An insured whose policies have been in force only two years and who has failed to pay the third annual premiums when due is not entitled to the loan value or stipulated insurance which paragraphs 6 and 7 of section 1 of the act of 1907 (Laws of 1907, p. 368,) compel life insurance policies to provide after the payment of three full years' premiums in cash, where he secures re-instatement by

paying only one-fourth of the third annual premiums in cash and by giving notes for the balance, which are not accepted by the company as absolute payment.

5. SAME—*when payment of premiums is a condition precedent to liability of life insurance company.* In the absence of special agreement the payment in cash of premiums which are due is a condition precedent to or at least concurrent with the assuming of any obligation by a life insurance company in re-instating lapsed policies.

6. SAME—*retention of notes after maturity is not a waiver of condition to pay premiums on which they were given.* Where a life insurance company, upon re-instating lapsed policies, accepts notes given in part payment of the lapsed premiums on express condition that all benefits under the policies shall be forfeited if the notes are not paid at maturity, the retention of the notes after maturity is not a waiver of the condition on which they were given but is consistent with the assertion of forfeiture, as they may be held by the insurer merely as evidence of their non-payment.

7. SAME—*insurance statutes are enacted on principles of public policy.* Statutes on insurance are enacted as a shield and not as a sword, and they declare principles of public policy in the protection of the interests of the general public by putting the insurance business on a sound financial basis as well as by guaranteeing the policyholder sound insurance.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

SCHUYLER & WEINFELD, (CARL J. APPELL, of counsel,) for appellant.

THOMAS E. ROONEY, and FERDINAND GOSS, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

December 30, 1911, the North American Life Insurance Company, appellee, issued two policies for $50,000 each on the life of Rudolph C. Keller, in which Keller's estate was named as the beneficiary. December 30, 1912, Keller failed to pay the second annual premium and the policies subse-

quently lapsed. February 19, 1913, Keller made application for re-instatement, and at the same time requested that one of the policies be canceled, and that two new policies be issued in lieu thereof,—one for $30,000, naming Keller's estate as the beneficiary, and the other for $20,000, naming Eleanor Delaney (now Eleanor Chapman) as beneficiary. Both requests were granted. The latter policy was before us in *Chapman v. North American Life Ins. Co.* 292 Ill. 179, but none of the questions involved here were then considered or decided. At the time of this re-instatement Keller paid the premium due on each of the policies for the half year ending June 30, 1913. At the end of this period he again failed to pay the premium due and the policies subsequently lapsed. July 8, 1913, Keller filed a second application for re-instatement, which was granted, and the premiums were paid to December 30, 1913. On the last named date there were due on the policies payable to the estate of Keller, premiums amounting to $1581.61 for the year 1914. These premiums were not paid and the policies in due course lapsed. February 25, 1914, Keller made the third application for re-instatement, which was allowed and the premiums for the year 1914 were paid by cash and notes, as follows:

| Policy No. | Am't. | Annual Prem. | Pd. in cash | Pd. by note |
|---|---|---|---|---|
| 18098 | $50,000 | $988.50 | $248.50 | $740.00 |
| 18099 | $30,000 | $593.10 | $149.10 | $444.00 |
| | $80,000 | $1,581.60 | $397.60 | $1,184.00 |

The note given in part payment of the premium due on the $50,000 policy reads:

"Due 6/30/14.        Pol. No. 18098.    *Dec. 30, 1913.*—$740.

"Six months after date I promise to pay to the North American Life Insurance Company of Chicago seven hundred forty and no/100, value received, with interest at the rate of five per cent per annum, at 1702 North American bldg., Chicago, Illinois.

"It is agreed that this note is given in part payment of premium due 12/30/1913 on policy No. 18098, with the understanding that all claims to further insurance, and all benefits whatever which

payment in cash of said premium would have secured, shall become immediately void and forfeited to said company if this note is not paid at maturity.                                        R. C. KELLER."

The receipt issued by the company reads:

"Received from owner of policy No. 18098, $248.50 in cash and a promissory note for the balance of the annual payment due thereon December 30, 1913, subject to the following agreement:

"It is agreed that this receipt is given and accepted with the understanding that all claims to further insurance, and all benefits whatever which payment in cash of said premium would have secured, shall become immediately void and be forfeited to said company if the promissory note or notes given in payment for the premium due as above be not paid at maturity.

$740.00.—Due June 30, 1914.      J. H. McNAMARA, *President*.

"Countersigned Feb. 25, 1914:  R. G. Messinger, *Cashier*."

The note and receipt referring to the $30,000 policy are exactly the same except as to policy number and amount. April 7, 1914, Keller had the $30,000 policy changed to one for $20,000 and one for $10,000, both payable to his estate. About ten days before the premium notes were due the company notified Keller in writing that they would be due June 30, 1914. The notes were not paid and were produced by the company on the trial. May 15, 1915, Keller died. The last payment made to the company was the one made by Keller at the time of his third re-instatement, February 25, 1914. So far as the record shows, there was no communication or further transaction between Keller and the company after June 20, 1914. Lillian H. Keller, widow of the insured, was appointed administratrix of his estate, and brought suit for $80,000 and interest on the three policies payable to his estate.

Appellant claims that the third year's premiums were paid by the cash and notes given the company February 25, 1914, and that the provision in the notes and receipts that the policy would become void if the notes were not paid at maturity was not binding because of certain provisions of "An act relating to the transaction of the business of life insurance in the State of Illinois, and regulating the

conditions and provisions of policies of life insurance companies, organized under the laws of this State, or doing business herein," approved May 20, 1907, and in force January 1, 1908. (Laws of 1907, pp. 367-370.) The first provision on which appellant relies is that contained in paragraph 3 of section 1 of the act, which provides "that the policy, together with the application therefor, a copy of which application shall be endorsed upon or attached to the policy and made a part thereof, shall constitute the entire contract between the parties;" and the second provisions on which she relies are those contained in paragraph 6 of the same section, which provides that the policy issued by the company must make provision "that after three full years' premiums have been paid, the company, at any time, while the policy is in force, will loan, on the execution of a proper note or loan agreement by the insured, and on proper assignment and delivery of the policy and on the sole security thereof," any sum of money less than the reserve at the end of the current policy year on the policy, and on the dividend additions thereto, if any, on certain conditions not here important, and which provides further that "no condition other than as herein provided shall be exacted as a prerequisite to any such loan;" and also the provisions of paragraph 7 of the same section, which provides that the policy shall contain provisions "that in the event of default in premium payments, after premium shall have been paid for three years, the insured shall be entitled to a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on dividend additions thereto, if any," less a specified percentage; and also the provisions of paragraph 4 of section 2 of the act, which provides that no policy of insurance shall contain "a provision for forfeiture of the policy for failure to re-pay any loan on the policy, or to pay interest on such loan while the total indebtedness on the policy is less than the loan value thereof."

The policies in question conform to these requirements of the statute. They provide that cash loans will be granted on the sole security of the policy and proper assignment of the same at any time while the policy is in force, "after premiums have been paid in cash for three full years," for a sum specified in the policy, at the rate of five per cent per annum. The policies contain a table of loan and surrender values. They provide that after the policy has been in force and the premiums have been paid in cash for three full years the policies will be extended for a term of two years and four months at their full face value if there be no indebtedness to the company, and at a less value if there be indebtedness, or endorsed for paid-up life insurance for $4320, or will have a cash surrender or loan value of $1520. They provide further that after premiums shall have been paid in cash for three full years, if any subsequent premium is not paid within one month after the day when due, and if the policy is not surrendered for its cash surrender value or endorsed for paid-up life insurance, the insurance will be automatically extended as non-participating paid-up term insurance for certain periods and on certain conditions specified.

Appellant's contention, therefore, amounts to this: The acceptance by the company of the cash and the notes at the time of the third re-instatement constituted a payment of the third year's premium, and when the fourth year's premium was not paid the automatic extended insurance clause of the policy became operative, and the policies not being surrendered for their cash surrender value nor endorsed for paid-up insurance, were by their own terms automatically extended for a term of two years and four months at their full face value of $80,000, and Keller having died during the term, appellant was entitled to recover this amount with interest, less the indebtedness represented by the notes, or a total sum of $93,935.52.

Appellee contends, first, that failure to pay the notes June 30, 1914, caused the policies to lapse, as plainly provided in the notes and receipts, and that there was thereafter no liability under the policies; and second, that if there was any liability under the policies, then, under the plain provisions of the automatic extended insurance clause, the indebtedness represented by the notes should be first deducted from the cash surrender value and the difference then applied to the purchase of term insurance for a period of two years and four months, which would in this case amount to $14,568.40.

The circuit court of Cook county held that the policies were in force and that the amount due under the automatic extended insurance clause of the policies was $14,568.40 with interest, and gave judgment in favor of appellant for $17,378.77. Appellant sued a writ of error out of the Appellate Court for the First District and presented her contentions by proper assignment of errors. Appellee assigned cross-errors, which presented its contentions. The Appellate Court affirmed the judgment of the circuit court and allowed a certificate of importance, pursuant to which this appeal is prosecuted. All the questions presented in the courts below are presented by assignments of errors and cross-errors.

The first and most important question is, Were the policies in force when the insured died? At the outset we find the law reasonably well settled that a note given by a debtor for a precedent debt will not be held to extinguish the debt in the absence of an agreement to that effect, but will be considered as conditional payment or as collateral security or as an acknowledgment or memorandum of the amount ascertained to be due. The doctrine proceeds on the obvious ground that nothing can be justly considered as payment in fact but that which is in truth such, unless something else is expressly agreed to be received in its place. That a mere promise to pay cannot of itself be re-

garded as an effective payment is manifest.  (21 R. C. L. 70; *Walsh* v. *Lennon*, 98 Ill. 27; *Belleville Savings Bank* v. *Bornman*, 124 id. 200.)  In *Heartt* v. *Rhodes*, 66 Ill. 351, Story on Promissory Notes is quoted, as follows: "In general, by our law, unless otherwise specially agreed, the taking of a promissory note for a pre-existing debt or a contemporaneous consideration is treated *prima facie* as a conditional payment, only,—that is, as payment, only, if it is duly paid at maturity."  In the absence of an express agreement by the company to accept the notes in question as an absolute payment of the premium the premiums cannot be considered paid.

Appellant contends that since the premiums were paid part in cash and part by notes, and since the notes and the receipts issued at the time the notes were given both expressly state that the notes were given in part payment of the premium due, an express agreement to receive the notes as absolute payment of the premiums is established.  This contention is not sound, because the notes and the receipts both state in the same sentence in which it is said that the note is given in part payment of the premium due, that the notes are accepted by the company "with the understanding that all claims to further insurance, and all benefits whatever which payment in cash of said premium would have secured, shall become immediately void and be forfeited to said company if this note is not paid at maturity."  It is elementary that the entire instrument in question must be considered in determining the agreement between the parties to the instrument.  When these notes were made the policies had lapsed and the notes were given in connection with an application for re-instatement, and in determining the agreement of the parties at this time the application for re-instatement, the notes and the insurance contract must be construed together.  When the parties met to make this new contract only two full years' premiums had been paid, and the policy had no loan, cash surrender, extended insur-

ance, term insurance or other value whatever. The policies, in conformity with our statutes, provide that these values shall not attach to the policy until three full years' premiums have been paid in cash. Keller was not entitled to a loan on the policy. Strictly speaking, the company was bound to give him no consideration whatever, and whatever indulgence the company granted him was voluntary on its part. It accepted the cash and the notes in payment of the third year's premium upon the express terms and conditions mentioned in the notes and receipts. By the plain terms of these instruments they were accepted in part payment conditionally on their being paid at maturity, and if not so paid all claims to further insurance, and all benefits whatever which payment in cash would have secured, were forfeited and the policies became void. The fact that Keller paid $397.60 in cash, which was about one-fourth of the total premium due, did not give him the benefit of having paid three full years' premiums in cash. The company was not bound to re-instate the policies until Keller complied with the provisions of the policies for re-instatement and paid in cash the premiums due. At his request it could permit him to pay the annual premium in quarterly or semi-annual installments. While the instruments before us do not show a division of premium, it amounts to a payment of the first quarter in cash and the conditional payment of the last three-quarters by note, provided the note was actually paid at the end of the second quarter. The company had indulged Keller's delinquency at every premium-paying date, and unless the statute forbids the indulgence here extended to Keller we see no sound reason for holding that the terms and conditions were not fair and reasonable.

In *Iowa Life Ins. Co.* v. *Lewis,* 187 U. S. 335, 23 Sup. Ct. 126, the court had before it a question similar to the question we are considering, and the contention in that case was that the contract by the terms of the policy was wholly

included in the policy and the application thereto attached. In discussing this question the court said: "The delivery of a policy of insurance and the payment of the premium are reciprocal or concurrent considerations. Necessarily, therefore, the payment of the premium can be exacted simultaneously with the delivery of the policy. Of course, such payment can be waived and a note,—the credit of the assured,—accepted, either absolutely or upon conditions. And we do not see how it can make any difference where the conditions are expressed,—whether in the policy, in the note or in the receipt given for the premium, or whether on the face of the latter or on its back. The agreements of parties may be expressed in many papers." It was further held in that case that the policy of life insurance was forfeited, without any affirmative action on the part of the insurance company, by the failure to pay at maturity the note given for the payment of the premium, which was accepted on the condition that if not paid at maturity the policy would cease and determine.

In *Ressler* v. *Fidelity Mutual Life Ins. Co.* 110 Tenn, 411, 75 S. W. 735, the court had before it a case like the one at bar. In the discussion it is said: "Promptness in the payment of premiums is essential to the success of an insurance company. To the fund derived from premiums the company must look to meet expenses incurred in its operation and to the creation of a reserve to be held for payment of losses when they occur. No company could long remain solvent if the rights of the policyholder were preserved for him notwithstanding his delinquency and the insurer be left to recover the premium due through the tedious process of the courts, with the risk of encountering an insolvent debtor after judgment. To enforce promptness, clauses of forfeiture under some form or other are usually found in contracts of insurance, and these clauses are enforced by the courts unless in some way waived by the insurer. As was said in *Klein* v. *New York Ins. Co.* 104

U. S. 88: 'If the assured can neglect payment at maturity and yet suffer no loss or forfeiture premiums will not be punctually paid. * * * The provision, therefore, for the release of the company from liability on the failure of the insured to pay the premiums when due is of the very essence and substance of the contract of life insurance. To hold the company to its promise to pay the insurance notwithstanding the default of the assured in making punctual payment of the premiums is to destroy the very substance of the contract.' "

In construing the writings before us we must place ourselves in the position of the parties at the time the re-instatement contract was made. We have Keller saying to the company that he is unable to pay his premiums promptly but that he desires the indulgence of the company in order to save his insurance, and we have the company replying that such indulgence will be given and his notes will be accepted in part payment of the premium, on the express condition, however, that a forfeiture will be declared if the notes are not paid at maturity. Thereupon notes are executed containing the condition, and a receipt is given Keller calling his attention to the necessity of strict compliance with the requirement to pay the notes at maturity in order to avoid forfeiture of his policy. Such an arrangement amounts to just this: The company had the right to declare the policies forfeited for non-payment of premiums due, but in consideration of Keller's payment of part of the premium in cash and of his agreement to pay the remainder of the premium the company waived its right to declare a forfeiture and agreed to keep the policies alive for an additional six months. At the end of this time the insured had not kept his part of the agreement and the policies lapsed. If the contention of appellant were tenable there would be no reason, save a sense of moral obligation, for the payment of any premiums on insurance policies after the one payment by which the issuance of a policy had been

secured.  It is true, as suggested by appellant, that courts are prone to construe life insurance policies favorably to the insured, but we are aware of no case in which the court has gone to the length of making a contract by judicial construction which the insured did not see fit or was not able to make in his lifetime.  That the payment of premiums by the insured is a condition precedent to or at least concurrent with the assuming of any obligation by an insurance company under terms such as are embodied in the policies before us seems beyond question.  The mere retention of the notes after maturity does not furnish ground for presuming or inferring a waiver of the conditions upon which the notes were given and accepted.  Such retention is consistent with the assertion of forfeiture, since the notes may be held by the insurer merely as evidence of their non-payment.

Appellant contends that the authorities hereinbefore cited are not applicable because the statute of this State forbids any writing not attached to the policy of insurance from being considered as a part of the insurance contract.  In *Fidelity Mutual Life Ins. Co.* v. *Price*, 117 Ky. 25, 77 S. W. 384, the court had before it a case similar to the one at bar, and it held that the Kentucky statute, which requires the full contract of insurance to be embodied in the policy, did not render invalid a stipulation in a note given for a premium that default in payment of the note should render the policy void.  In the discussion it is said:  "The statute referred to, among other things, provides that no insurance company 'shall make any contract of insurance, or agreement as to such contract, other than is plainly expressed in the policy issued thereon.'  (Ky. Stat. 1899, sec. 656.)  This clause evidently is not applicable to the facts of this case.  It relates to the time the policy was issued.  If it had the effect, as contended by counsel, that the note was void, and likewise its provisions, because it was not attached to the policy, the appellee could not get

301—14

any benefit from the execution of the note. If it was void because it was not attached to the policy its terms would not be binding on either party. The logic of counsel's position would be, that as there was no valid agreement between the parties as to the extension of time for the payment of the premium the policy was forfeited on the 20th of November, 1900, and the insured was never relieved from the forfeiture. If the contract was void then the court would not uphold the part that was beneficial to the insured, to-wit, the extension of time for the exercise of the right of forfeiture, and deny the company the right to insist upon the forfeiture upon the failure to perform that part of the contract which induced the company to extend the time for declaring the forfeiture."

A case on all-fours with the case at bar was before the Supreme Court of Oregon in *French* v. *Columbia Life and Trust Co.* 156 Pac. 1042, and every contention of appellant is answered in the opinion filed in that case. The statute of Oregon provides that no life insurance company shall make any contract of insurance in Oregon other than as plainly expressed in the policy issued thereon. In discussing the question whether the premium notes, which contained a forfeiture clause similar to the one in the case at bar, could be considered as a part of the contract, the court said: "It is conceded that both policies would have lapsed if the insured had not executed the two notes in 1913, and therefore if plaintiff can recover at all that right exists only because the notes were executed. Elizabeth French must stand upon the notes or fall with them. * * * If the stipulations for the termination of the policies appearing in the notes violate section 4632, L. O. L., then the instruments are invalidated in their entirety, especially when it appears on the face of the writings that those stipulations are of the very essence of the instruments. If the statute bans the stipulation for the lapsing of the policy because the stipulation is not attached to and made a part of the policy it-

self, then the whole note becomes lifeless and the plaintiff cannot recover. Although a situation might arise where the court would enforce a contract made in violation of a statute, * * * still, under the circumstances presented here, there is no force in the argument that the court should cleanse the note by removing the impurities with the judicial knife and then vouch for the success of the operation by declaring that life remains in the mutilated remnant." The court held that the policies lapsed for failure to pay the notes at maturity.

Appellant contends that since on re-instatement the old policy is put back in force (*Monahan* v. *Fidelity Mutual Life Ins. Co.* 242 Ill. 488,) it cannot be put back in force except upon the conditions under which it was originally issued. The statute makes no such requirement. It requires that no policy shall be issued except that it contain a provision that the policy, together with the application thereto attached, shall constitute the entire contract between the parties. It does not follow that where the insured permits the policy to lapse the parties may not agree to extend the time for the payment of the premium and set forward the time of forfeiture. To give the statute this construction would prevent the insured from securing indulgence from the company, and the practical result would be to deprive persons in Keller's position of the privilege of re-instating the policy. Keller was undoubtedly unable to pay the full amount due in cash, and the company could not be expected to reinstate his policy and set forward the time of forfeiture on a mere unconditional promise to pay at some time in the future. To sustain the contentions of appellant would be to defeat one of the purposes of our statutes on insurance. These statutes declare a principle of public policy regulating all life insurance and putting that business on a sound financial basis. It is in the interest of the general public in that the statute aims to guarantee the policyholder sound insurance. The statute was intended as a shield and not as

a sword.   It was intended to protect the frugal policyholder who pays his premiums in cash, and not to compel insurance companies to carry risks where premiums are paid in worthless notes.   By the collection of premiums, alone, can any insurance institution expect to pay its obligations or do business at all without impairment of its capital and ultimate insolvency.   If would-be beneficiaries can force upon an insurance company dishonored paper as payment, or if the company may be permitted to accept such a substitute, all other policies it has issued will be impaired.

Shorn of unnecessary verbiage and legal niceties appellant's contention amounts simply to this:   Keller, by placing his signature on the premium notes, unconditionally paid the third year's premiums on the policies, thereby giving them a loan value of $1520, and then borrowed about $1200 on the policies to pay the principal and interest of these notes, thereby securing under the automatic extended insurance clause $80,000 of insurance for two years and four months.   That the contention is unsound and fallacious admits of no argument.   · To sustain the contention is to reach, by arguing in a circle, a conclusion that could not be reached by proceeding in a straight line.   It is as illogical as to contend that one can lift himself over a fence by his own boot-straps.   As we have said, the policy had lapsed and had no loan value; so Keller could not borrow on the policy.   Three full years' premiums had not been paid, and so the provisions of paragraphs 6 and 7 of section 1 of the act under consideration did not apply.   The provisions of paragraph 4 of section 2 of the act did not apply because no loan was made on the policy.   To sustain appellant's contention is to give Keller's estate all the benefits and relieve it of the burdens growing out of the re-instatement agreement.   It makes the company furnish the money out of the loan value of the policy with which to pay the note that Keller gave it to create the loan value.   By this operation the note provided the means with which to pay itself, and

secured, in addition thereto, $80,000 of insurance. To place such a construction on the transaction occurring at the time of the re-instatement would be to defraud the company of its property. As it was, the result of the transaction was strongly in favor of Keller. By paying one-fourth of the premium in cash and giving his notes for the remainder he secured protection to the amount of $80,000 for six months, and if he had died within the period ending June 30, 1914, the company would have been liable to his estate for the full face value of the policies, less the indebtedness, if any, on the unpaid premium notes. His estate has, therefore, had protection to the amount of $80,000 for three months for nothing, and is entitled to nothing more.

It follows from what we have said that the policies were not in force at the time of the death of Rudolph C. Keller. The judgments of the circuit and Appellate Courts are therefore reversed.

*Judgment reversed.*