#### GUNTER v. PHILADELPHIA LIFE INSURANCE CO.

(125 S. E., 285)

1. INSURANCE—INSURER MAY WAIVE PAYMENT OF PREMIUM, IN CASH, IN ADVANCE, REQUIRED BY POLICY.—Insurer may waive compliance with provision of policy requiring payment of premium, in cash, in advance by accepting premium note.

2. INSURANCE—INSURER, BY ACCEPTANCE OF PREMIUM NOTE, MERELY EXTENDS TIME FOR PAYMENT, AND WAIVES NOTHING BUT PAYMENT IN CASH.—Insurer, by acceptance of premium note, merely extends time for payment of premium, and waives nothing but payment in cash, leaving all other conditions in force.

3. INSURANCE—PREMIUM NOTE HELD NOT PAYMENT OF PREMIUM.—Insurer's acceptance, in response to insured's request for extension of time for payment of premium, of premium note, stating that nonpayment of note would cause forfeiture of policy, and that insured incurred no personal liability upon note, *held* not payment of

---

NOTE: On effect of express stipulation suspending or avoiding policy of life insurance in case of nonpayment of premium note at maturity, see note in 5 B. R. C., 389.

premium, notwithstanding receipt given insured, where such receipt showed that premium had not been paid, that extension note had been executed, and that no cash had been paid.

4. INSURANCE—INSURER, BY WRITING INSURED LETTERS, NOTIFYING HIM OF LAPSE OF POLICY, AND OFFERING TERMS OF REINSTATEMENT, DID NOT WAIVE FORFEITURE.—Insurer, who extended time for payment of premium on execution of premium note providing for lapse of policy on nonpayment of note at maturity, did not, by writing the insured letters, notifying him that his policy had lapsed for failure to pay note, and offering terms of reinstatement, waive forfeiture of policy for nonpayment of premium.

5. INSURANCE—ELEMENTS ESSENTIAL TO INSURER'S WAIVER OF FORFEITURE STATED.—Before insurer can be held to have waived forfeiture provided for in the contract, it must appear that it had knowledge of the act of the insured which worked the forfeiture, that it entered into negotiations with the insured which expressly or impliedly recognized the continued validity of the policy, and that insured was induced by such negotiations, or by conduct of insurer, to incur expense or trouble under a reasonable belief that loss would be paid, and the forfeiture waived.

6. INSURANCE—INSURER'S RETENTION OF PREMIUM NOTE AFTER MATURITY HELD NOT WAIVER OF FORFEITURE.—Where insurer extended time for payment of note, and accepted premium note providing that insured had not incurred personal liability on note, and that nonpayment would cause forfeiture of policy, it did not, by retention of note after maturity, waive forfeiture.

Before FEATHERSTONE, J., Aiken, May, 1922. Reversed and remanded with directions.

Action by Hattie Gunter against the Philadelphia Life Insurance Company. Judgment for plaintiff and defendant appeals.

*Messrs. Parker, Stewart, McRae & Bobbitt* and *Herbert E. Gyles,* for appellant, cite: *Payment of premiums and conditions governing:* 57 S. E., 892; 14 R. C. L., 977. *Cooley's Briefs on Ins.* (2d Ed.: Vol. 2, p. 1867-8. *Bacon on Ins.* (4th Ed.): Vol. 2, par. 476; 104 U. S., 252; 187 U. S., 335; 57 S. E., 892; 54 S. E., 643; 74 S. E., 441. *As to forfeiture:* 296 Fed. decided Feb. 1924; 117 S. W., N. C., 336; 157 N. C., 142; 160 N. C., 599. *As to waiver:* 384; 156 Pac. 1042; 177 Fed. 892; 117 N. C., 333; 167

103 S. C., 288; 95 S. C., 3; 72 S. C., 219; 114 S. C., 204; 121 S. C., 392; 96 S. C., 377; 108 S. C., 137; 95 S. C., 164; 95 S. C., 2; 93 S. C., 90. *Requiring return of note no condition of forfeiture:* 89 S. E., 432; 187 U. S., 335; 80 N. Y., 32; 49 S. W. 425.

*Messrs R. L. Gunter* and *Henderson & Salley,* for respondent, cite: *Directed verdict correct:* 101 S. C., 249.

November 11, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action upon a life insurance policy issued to Thomas L. Gunter, March 26, 1918, in the sum of $1,000. He died in January, 1922, and this action is by the plaintiff, his widow, the beneficiary under the policy.

The documentary evidence in the case and the admissions of counsel establish beyond and without controversy the following facts: The annual premium payable in advance was $34.45 (and not $32.85 as stated by counsel for respondent in their brief); the premiums accruing at the issuance of the policy, March 26, 1918, and upon the anniversaries in the years 1919 and 1920, were paid; no controversy has arisen as to them; on October 22, 1920, the insured borrowed from the company the loan value of the policy at that time, $26, and gave his note, signed also by the beneficiary, for that amount, payable March 26, 1921, the anniversary of the policy, with interest at 5 per cent payable in advance. It appears that the interest from October 22, 1924, to March 26, 1921, was deducted from the $26, at the date of the note. This loan note cuts very little figure in the case, and is referred to in explanation of the settlement made by the parties in reference to the premium which fell due on March 26, 1921.

Prior to that date, on March 21st, the insured wrote the company that he could not pay the premium which fell due on the 26th, and asked for an extension of 30 days. On

the 24th he wrote that he could not pay the loan note, and asked for an extension of 30 or 60 days. The company complied with his request by extending the payment of the premium to May 26, 1921, and the loan note to March 26, 1922, by accepting a premium note for $32.85, payable May 26, 1921; the amount being arrived at in this way:

Premium due March 26, 1921 ................$ 34.45
Interest in advance on loan note ...............     1.30
Interest in advance on premium note ................      .29

$ 36.04

Credit by dividend earned on policy ............$   3.19
Balance due, represented by the premium extension
    note ....................................     32.85

$ 36.04

Prior to May 26, 1921, the date of the maturity of the premium extension note, the insured wrote the company, asking for a further extension of 60 days. On May 30, 1921, the company wrote the insured, agreeing to extend the premium extension note to July 26, 1921, if he would pay $3.00 thereon, and allowing him until June 8th to make that payment. The insured paid the $3.00, and the note was extended to July 26, 1921. It was not paid at maturity or afterwards.

Notwithstanding this failure, the company wrote the insured repeatedly, declaring the policy lapsed, but offering to reinstate it if he would pay the balance due on the note, $29.85 ($32.85 less the payment of $3), with interest, and furnish satisfactory evidence of insurability. They wrote him to this effect on August 11, August 29, September 14, September 28, and October 15, 1921. In the last letter they offered to accept a note of $14, if he would pay the difference, $15.85 and interest in cash. He paid no attention to

any of these offers, paid nothing upon the note, and died, as stated, in January, 1922.

The policy provides:

*"Failure to pay any premium or note when due will forfeit the policy and all payments made thereon."*

The premium extension note provides:

*"If this note is not paid at maturity, or at the expiration of any period, to which it shall have been extended, the said insurance contract No. 40717, and all further liability of said Philadelphia Life Insurance Company on account of said contract, shall immediately cease and determine."*

At the time the premium extension note was given and accepted by the company, the latter gave the insured a receipt, as follows:

"Received from the owner of policy No. 40717 the annual payment due March 26, 1921.

| | | | |
|---|---|---|---|
| Notes | $ 32.85 | $ 34.45 | Premium. |
| Interest | .29 | 3.19 | Dividend. |
| Cash payment | ——— | $ 31.26 | Am't rec'd. |

"Paid March 28, 1921."

At the same time the company gave to the insured a receipt for $1.30, the interest at 5 per cent in advance for a year, upon the $26 loan note. At the close of the evidence on both sides, the defendant moved the Court to direct a verdict in its favor, upon the ground that, under the terms of the policy and of the premium extension note, the failure of the insured to pay the premium extension note at maturity (an admitted fact in the case) forfeited all rights of the insured under the policy, and that there was no evidence tending to show a waiver by the company of such forfeiture.

His Honor, the Circuit Judge, refused the motion, saying:

"I think the case will have to be submitted to the jury, under the *Clark Case,* to determine whether or not this note was taken in payment of that premium, or simply as a mere

evidence of indebtedness. I do not think that there is any evidence to go to the jury on the question of waiver, and therefore I am going to submit it to the jury on the one question,"

—which in his charge he accordingly did. The jury rendered a verdict in favor of the plaintiff for $932.90, and from the judgment entered thereon the defendant has appealed. The exceptions are numerous, but in the view which we take of the case the discussion will be confined to the single question, whether or not the Circuit Judge erred in refusing the motion of the defendant for a directed verdict. Concluding that he did, the other questions raised by the exceptions are negligible.

Both the policy and the premium extension note provide especially for a forfeiture of all rights under the policy, upon failure of the insured to pay the premium note at maturity. Of this failure there is not the shadow of a doubt. The fourth premium was due March 26, 1921. The insured obtained an extension to May 26, 1921, and a further extension to July 26, 1921; and, although he was entreated by the company, in not less than five letters, between August 11, 1921, and October 15, 1921, to have his policy reinstated, not a line or a penny was received from him.

The contention of the counsel for the plaintiff is thus expressed in their brief:

"The plaintiff's theory [is] that the note of March 26, 1921, was actually accepted as in payment of the premium, and not as a mere evidence of indebtedness, *the stipulation of the policy and note to the contrary notwithstanding,*"

—and this they propose to demonstrate by the terms of the receipt.

Counsel do not contend that the receipt is evidence of a cash payment of the premium. They could hardly take that position in view of the letter of the insured, stating that he could not pay the premium, and asking for an extension, and the execution of the note in compliance with his request.

Their contention, as we understand it, is that inasmuch as the receipt for the premium makes no reference to the execution of a premium note, nor to the condition of forfeiture contained in both the policy and the note, the receipt is evidence that the premium note was accepted as in payment of the premium, although the note itself contains a statement directly to the contrary; in other words, that an absolute receipt for the premium annihilates the condition stated in the note.

The policy requires the payment of a premium in cash, in advance. There can be no doubt, however, of the proposition that the company may waive this requirement by accepting a premium note. There is nothing in the policy which requires the company to do so, however, and its acceptance of a premium note, in lieu of the cash, is purely a matter of convention between the insured and the company. Being a matter of convention, it plainly is subject to such terms as the parties may agree upon; that it amounts simply to an extension of the time for the payment of the premium, waiving nothing but the payment in cash, and leaving all other conditions in force, appears too plain for an argument. As a matter of fact it was accepted in response to the request of the insured for an extension. As is very clearly stated in the case of *Hipp v. Insurance Co.,* 128 Ga., 491; 57 S. E., 892; 12 L. R. A. (N. S.), 319:

"While the taking of the notes in lieu of a prepayment in cash waived such prepayment, or postponed the time of payment, *it did so on the terms agreed upon.* It did not operate both to waive the prepayment in cash, *and also to waive the express * * * conditions on which the postponement of payment was agreed upon.*"

What, then, is the effect of the receipt given by the company for the premium that was due on March 26, 1921? It would appear from the argument of counsel for the plaintiff, based upon the decision of this Court in the case of *Clark v. Insurance Co.,* 101 S. C., 249; 85 S. E.,

407, that this depended upon the question whether the receipt was absolute in its terms or not. Assuming for the moment that this is the true test, we do not think that the plaintiff's contention that the receipt is of this character can be sustained. What we mean by a receipt absolute in terms, if such an explanation be necessary, is a receipt acknowledging the payment of a premium, with nothing on its face to show that a premium note has been taken, or that the condition of forfeiture in the policy and note was under consideration. The receipt in question is not a bald, unqualified acknowledgment of the payment of the premium, which might raise a presumption either that the premium had been paid in cash, or that the premium note had been accepted in payment of the premium, for it shows upon its face that it was given for the premium note and the interest items, less the dividend, and that no cash had been received. It shows:

| | |
|---|---:|
| Due by insured for premium | $ 34.45 |
| Less dividend | 3.19 |
| | $ 31.26 |
| Due for interest on the premium note for two months in advance | .29 |
| Due for interest on the loan note for one year in advance | 1.30 |
| | $ 32.85 |
| Closed by note for | 32.85 |

With these documents before the Court for its construction (the policy, the note, and the receipt), what possible evidence that the receipt indicated a cash payment, or that the note which upon its face shows the contrary, was intended as a payment of the premium, was available or admissible?

Even if the receipt had been a bald acknowledgment of the receipt of the premium due on March 26, 1921, with no statement, no reference to a premium note, no declaration of

the absence of a cash payment, no reference to the condition of forfeiture, taken in connection with the premium note simultaneously executed, there could have been no other inference than that the amount stated in the receipt represented the amount of the extension note.   There was not a particle of evidence in the case that the receipt represented actual cash; what was there to leave to the jury?   Surely not the question whether or note the note was accepted as payment of the premium when the note as well as the policy contained the forfeiture clause in the event of nonpayment of the note for the deferred premium.   We concede that the acceptance of the note was a waiver of the cash payment of the premium on March 26, 1921; but it represented an agreement on the part of the insured, in order to secure that extension, that if it should not be paid at maturity or at an extended date, the policy should lapse.   The plaintiff would stand by the benefit secured to him and repudiate his obligation, which was the condition of that benefit.

The matter is concluded by the case of *Insurance Co. v. Lewis,* 187 U. S., 335; 23 S. Ct., 126; 47 L. Ed., 204.   In that case the policy contained no provision that the nonpayments of a premium note would forfeit the rights of the insured; neither did a premium note given for the initial premium but the receipt for the premium did contain such a provision.   The plaintiff contended that the contract was controlled by the terms of the policy and premium note, and that the condition imposed by the receipt was not an agreement upon which the minds of the parties met.   The Court declined to accept that view and said:

"The delivery of a policy of insurance and the payment of the premium are reciprocal or concurrent considerations. Necessarily, therefore, the payment of the premium can be exacted simultaneously with the delivery of the policy.   Of course, such payment can be waived and a note—the credit of the assured—accepted, either absolutely or upon conditions.   *And we do not see how it can make any difference*

*where the conditions are expressed*—whether in the policy, in the note, or in the receipt given for the premium, or whether on the face of the latter or on its back. The agreements of parties may be expressed in many papers, and, if the connection of the papers is not apparent, it may be shown by parol. *The present case does not even need the aid of that rule."*

Further on in the opinion by Justice McKenna it is said:

"All of the papers, therefore, embodied the agreement of the parties. In *Insurance Co. v. Norton,* 96 U. S., 234, the agreement was considered as 'embodied in the policy and the indorsement thereon, as well as in the notes and the receipt given therefor.' "

Commenting upon the case of *Insurance Co. v. French,* 30 Ohio St., 240; 27 Am. Rep., 443, the Court quotes what was said about it in *Thompson v. Insurance Co.,* 104 U. S., 252; 26 L. Ed., 765:

"But in that case no provision was made in the policy for a forfeiture in case of the nonpayment of a note given for the premium, and an unconditional receipt for the premium had been given when the note was taken; and this fact was specially adverted to by the Court."

In *Knickerbocker Ins. Co. v. Pendleton,* 112 U. S., 696; 5 S. Ct., 314; 28 L. Ed., 866, the precise question under consideration was determined. In that case the policy was issued on July 14, 1870, and the initial premium was paid in cash. On the next anniversary, July 14, 1871, the insured was not prepared to pay the premium in cash, and by agreement with the company secured an extension of three months by the execution of a draft for the amount of the premium. Both the policy and the draft contained the provision of forfeiture for nonpayment of the draft; but the receipt for the premium was absolute, acknowledging the receipt of the premium, and declaring the policy continued in force for another year, without reference to the previous extension draft or to the condition of forfeiture contained in the policy

and draft—exactly the situation for which the plaintiff contends in the case at bar. The Court held:

"This contract was expressed on the face of the draft itself, which contained a statement that it was given for premium on policy No. 2346, followed by this condition: 'Which policy shall become void if this draft is not.paid at maturity.' This was the condition * * * on which the policy was to become void. The primary condition expressed in the policy itself, of forfeiture for nonpayment of the premium on the day it became due, was waived by the receipt of the draft, and the consequent extension of the time thereby. *The renewal receipt given when the draft was received was absolute, it is true, acknowledging the receipt of the premium, and declaring the policy continued in force for another year. But this receipt is explained by the actual transaction; the mode of payment being shown to be the making and delivery of the draft in question, having in it the condition * * * expressed, which condition was in exact accordance with the secondary condition contained in the policy.* [Forfeiture for nonpayment of obligations for premiums.] We think it clear, therefore, that, *notwithstanding the renewal receipt,* the condition expressed in the draft was binding on the insured. As we have shown, that condition was that the policy should become void if the draft was not paid at maturity."

In *Sexton v. Insurance Co.,* 157 N. C., 142; 72 S. E., 863, it is said:

"There is no evidence that the defendant accepted the note as a payment of the premium. It is merely an extension of the time of payment. *In express terms the note on its face declares that the policy is void if the note is not paid when due.*" [The underscored sentence manifestly stating the reason for the previous statement.]

In addition to the express statement in the note that nonpayment of it would cause a forfeiture of the policy, the statement that the insured incurred no

personal liability upon the note, incorporated in the note, is conclusive that it was not intended as payment of the premium. Would it not be remarkable to hold that a note which imposed no personal liability upon the maker was accepted as payment in full of a debt?

It would be equally remarkable to hold that the note was accepted as payment of the premium and at the same time eviscerated the note of the most important element of it; for if the element of personal liability be eliminated, as it was by its terms, nothing is left of the note except the right to declare the policy lapsed for its nonpayment.

It is inconceivable that the note was intended as payment of the premium, when the uncontradicted evidence shows that it was accepted by the company in response to the request of the insured for an extension of the time within which the premium might be paid. It is declared with much confidence that this case is on "all fours" with the case of *Clark v. Insurance Co.,* 101 S. C., 249; 85 S. E., 407. We do not at all sustain that confidence.

In the *Clark Case* the circumstances were these: The policy was issued in 1905; the anniversary date was December 15; the initial payment of $121.66 was paid in cash, as also were the premiums for 1906 and 1907; the premium due on December 15, 1908, was not paid in cash, but was adjusted by the execution of four notes, aggregating $121.66 and payable at stated periods during the year 1909; both the policy and the notes contained the forfeiture clause in the event of the nonpayment of the premium extension notes; at the time of the execution of the notes the company gave the insured a receipt acknowledging the receipt of $121.66, "the annual premium on the  *  *  *  policy,  *  *  * containing said policy in force to the 15th day of December, 1909, at noon."

The receipt also contained this statement:

"This receipt is subject to the conditions of any and all

notes which have been given, as shown on margin hereof, for amount of said premium or any part thereof."

There were blank spaces on the margin for a description of any notes so given, but, as the Court declares:

"It does not appear upon the margin of said receipt that notes were given for the amount of said premium or any part thereof."

From this the Court concludes:

"Therefore, unless there was a resort to other testimony explanatory of the receipt, the proper construction would be that it appeared upon the face therof that the premium had been paid, and the policy continued in force. The defendant introduced both oral and written testimony to explain and contradict the receipt, and the plaintiffs relied upon certain facts and circumstances to show that the receipt, upon its face, represented the intention of the parties."

It was accordingly concluded that the conflicting inferences from the evidence presented an issue of fact for the jury, which rendered the direction of a verdict improper. The Court also held that there was sufficient evidence of the waiver of the forfeiture to require the submission of that issue to the jury.

The most that can be claimed for the *Clark Case* is that, if the receipt makes no reference to a premium note, "the proper construction would be that it appeared upon the face thereof that the premium had been paid, and the policy continued in force"; that it was incumbent upon the company to rebut this *prima facie* showing; and that, where the evidence was conflicting, the issue should be submitted to the jury.

In the case at bar the receipt showed that the premium had not been paid; that an extension note had been executed; and that no cash had been paid—circumstances that did not appear in the *Clark Case*. We do not see how it was possible for the insured, in the light of the documentary evidence, to have offered any testimony tending to show either that the premium was paid in cash, or that the premium note was

accepted as payment of the premium; and it is significant that no such attempt was made.

The respondent has given notice of a motion to sustain the Circuit Judge's order refusing the defendant's motion for a directed verdict, upon the additional ground that there was sufficient evidence tending to show that the company had waived this claimed forfeiture, to require a submission of that issue to the jury. The Court held in the case of *Lumber Co. v. Lumber Co.*, 79 S. C., 54; 60 S. E., 33 (quoting the syllabus):

"In a law case this Court cannot sustain a judgment on additional grounds urged by respondent."

The report of that case is not at all full; but is appears that the effort of the respondent was to sustain the verdict upon issues of fact, which would require the Supreme Court to pass upon them. The Court properly held that this could not be done. We are inclined to think, however, that the present case presents a different situation. The motion for a directed verdict came before the Circuit Judge as a question of law; the inference from the evidence as to waiver was a question of law, and, if he committed error in deciding the question, the verdict being in favor of the plaintiff, there would be no other way to correct that error than by the motion to sustain. The question has not been made by the appellant, and, without intending to decide it, we will consider the point made by the respondent as if it were properly before us. We agree with the Circuit Judge in his holding:

"I do not think that there is any evidence to go to the jury on the question of waiver."

The grounds of waiver urged by the respondent are: (1) The extensions, indulgences, granted by the company to the insured; (2) the failure of the company to return to the insured the premium note of $32.85.

As to the first ground: It is only necessary to cite the case of *Parry v. Insurance Co.*, 95 S. C., 1; 78 S. E., 441, to show that this ground cannot be sustained. The first indulgence was the extension of the time for paying the premium due March 26, 1921, to May 26, 1921, upon the execution of a note which provided explicitly that, if it should not be paid at maturity, the policy should lapse. Surely an extension, which by its terms provided for the right of forfeiture, cannot be considered as a waiver of that for which provision was made. The second extension was from May 26, 1921, to July 26, 1921. That was an extension of the note which had been executed on March 28th, and, of course, carried along with it all of the terms of that note, including forfeiture upon nonpayment at the new maturity. Thereafter, on the several dates above mentioned, the company wrote the insured five letters. In each of them they notified him his policy had lapsed for failure to pay the note due July 26th, and offering terms of reinstatement. In the case of *Perkins v. Insurance Co.*, 93 S. C., 88; 76 S. E., 29, the Court says:

"Appellants seem to base their argument of waiver principally on the letter of February 2, 1911. This letter expressly advised the insured that his policy had lapsed for nonpayment of premium, and offered to reinstate the policy on certain conditions, which it is not contended were complied with.   * * * To hold under the facts here that there was a legal waiver would make it unsafe for a creditor to ever extend a debt or indulge a debtor. Certainly an offer to reinstate on certain conditions, as was made in this case, cannot be regarded as a waiver, especially if the conditions are not complied with, and there is no contention here that the conditions were conplied with." (*Opinion by Mr. Justice Watts.*)

Before an insurance company can be held to have waived a forfeiture provided for in the contract, it must appear: (1) That it had knowledge of the

act of the insured which worked a forfeiture; (2) that it entered into negotiations with the insured which expressly or impliedly recognized the continued validity of the policy; (3) that the insured was induced by such negotiations, of the character stated, or by conduct of the company, to incur expense or trouble under a reasonable belief that the loss would be paid, the forfeiture waived. See authorities cited in the dissenting opinion of the writer in *Whaley v. Insurance Co.,* 124 S. C., 173; 117 S. C., 209.

As to the second ground: The failure of the company to return the premium note. The law does not require an entirely vain or useless thing. If the company was right in declaring, as early as August 11, 1921, 15 days after default, that the policy had lapsed for failure to pay the extended premium note on July 26th, and the note provided that the insured had incurred no personal liability upon it (although it would have been nothing but fair and just that he be required to pay for insurance, the benefit of which he enjoyed between March 26, and July 26th, what possible use could this note have been to the insured, or what benefit accrued to the company in retaining it, except as evidence of its contention that the note had not been paid, and that the forfeiture had been incurred—evidence which it surely had the right to preserve? The company could could not have sued upon the note. They have made no effort to collect it. The only right which they had under the terms of the note were to declare the policy lapsed for its nonpayment. This they have exercised and present the retained evidence of their claim. Under similar circumstances it is held in *Insurance Co. v. Tyler,* 147 Ga., 287; 93 S. E., 415 (quoting *syllabus* by the Court):

"Under the circumstances, the company could retain the note as evidence, without losing its right to terminate the policy in the manner indicated."

In *New York Life Ins. Co. v. Evans,* 136 Ky., 391; 124 S. W., 376, the Court says:

"Where the insurer, after the policy had lapsed, retained the note merely as evidence of the fact that it had been canceled, and acted consistently with its claim of forfeiture, it is held not to be a waiver of the forfeiture. * * * If, however, the insured retains the note as evidence of indebtedness to it, or asserts it as a debt against the insured (which is the same thing), the forfeiture is deemed to have been waived."

In *Keller v. Insurance Co.,* 301 Ill., 198; 133 N. E., 726, it is held (quoting *syllabus*):

"'The mere retention of premium notes after maturity does not furnish ground for presuming or inferring a waiver of conditions of forfeiture on which the notes were given and accepted; such retention being consistent with the assertion of forfeiture, since the notes may be held merely as evidence of their nonpayment."

"When a note for a renewal premium was not given in absolute payment but merely to extend time, the fact that the insurer retained the note without affirmatively indicating an intention to enforce payment does not show waiver or estoppel that will prevent an insistence on forfeiture."

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, with instructions to enter judgment in favor of the defendant under rule 27.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.