## BURR v. EQUITABLE LIFE INS. CO. OF IOWA.*

### No. 7955.

Circuit Court of Appeals, Ninth Circuit.

June 29, 1936.

Alfred J. Smallberg and Oliver M. Hickey, both of Los Angeles, Cal., for appellant.

*Rehearing denied Sept. 21, 1936.

Herman F. Selvin, of Los Angeles, Cal. (Loeb, Walker & Loeb, of Los Angeles, Cal., of counsel), for appellee.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the District Court after trial upon a stipulation which agreed on the facts and waived jury. Judgment denied recovery upon a contract of insurance executed by the appellee insurance company and insuring the deceased husband of appellant. The stipulated facts are that on or about September 19, 1928, the appellee issued to Leo E. Burr, husband of appellant, at Chicago, Ill., a ten-year term policy of insurance upon his life in the principal sum of $10,000, numbered 406287, to which was attached the application of the insured. The premium on the policy in the sum of $143.23 was paid annually to the insurance company. On or about the 8th of October, 1931, the insured executed and delivered to appellee a written request for conversion of the term policy to that of an ordinary life. The conversion was made. To the converted policy was attached the original application and medical report. The application and medical report bore the number of the original ten-year term policy, 406287, the ordinary life policy bearing number 492515. The ordinary life policy was likewise delivered to the insured at Chicago, Ill., and retained by the insured until his death, September 4, 1932.

On the date the term policy was exchanged for the ordinary life policy, the term policy had a reserve value of $135.03, and accrued dividends thereon in the sum of $60.70. The premium requirement of policy 492515 was $588.40, and appellee applied the full reserve and dividend value of policy 406287, in the sum of $196, towards the payment of the premium on policy 492515. On September 19, 1931, the insured executed a premium note in the sum of $392.-40 in favor of appellee, due four months after date.

On January 20, 1932, the insured paid the appellee the sum of $98.20 to apply on the premium. At the same time the insured executed and delivered to appellee his promissory note in the sum of $294.20 due and payable on March 19, 1932. The last note was not paid by the insured. The insured died September 4, 1932, proof of

death having been duly submitted to the insurance company and demand made upon it to pay the beneficiary, the appellant, the face amount of said policy, which appellee refused to do. Appellant brought this suit.

The insurance company's refusal to pay the policy was not based on the theory that the nonpayment of the premium note avoided the policy. It recognizes acknowledgment of the receipt of the premium on the policy prevents such a claim. Its position is that the policy, while existing for a period prior to the death of the insured, "ceased and determined" by virtue of the provisions of the insurance agreement itself and of the further agreement of the insured contained in the premium note for the sum of $294.20, which was due and unpaid nearly six months before the decease of the insured.

■ The insured's application for the insurance was for a form of ten-year term policy which (1) made the application and policy a single insurance contract, and (2) gave the insured the right to convert the term insurance into ordinary life insurance. Appellant's contention is that the three instruments are evidence of a single contract of insurance. In this regard appellant's contention is correct.

"The terms of the new policy were fixed when the original policy was made. In effect, it is as though the first policy had provided that upon demand of the insured and payment of the stipulated increase in premiums that policy should, automatically, become a 20-payment life commercial policy. It was issued not as the result of any new negotiation or agreement, but in discharge of pre-existing obligations. It merely fulfilled promises then outstanding, and did not arise from new or additional promises. *The result in legal contemplation was not a novation but the consummation of an alternative specifically accorded by, and enforceable in virtue of, the original contract.*" (Italics supplied.) Ætna Life Ins. Co. v. Dunken, 266 U.S. 389, 395, 399, 45 S.Ct. 129, 132, 69 L.Ed. 342.

"It seems to us quite clear that under the facts stated the new policy was but a continuation of the same insurance contract. *It was based on the old application and the old medical examination, and the new terms were in strict accord with the provisions of the first policy,* granting to the insured the right to make just such a selection to take the place of the original form. The same may be said of the higher rate of premium paid. We are unable to see how a different result can be based on the circumstance that the premium was fixed at the rate applicable to the age the insured had attained when the new policy was issued, that is, 48 years, rather than at the old rate, supplemented by the difference in cash, with 6 per cent. added. *The two rates meant the same thing to the company, being but different expressions of the same price of insurance;* but the choice of either was addressed simply to the convenience of the insured." (Italics supplied.) Silliman v. International Life Ins. Co., 131 Tenn. 303, 308, 174 S.W. 1131, 1132, L.R. A.1915F, 707.

■ The first and second premiums on the insurance were paid. Instead of paying the third premium, the insured applied for and obtained the conversion to the ordinary life insurance to which his contract entitled him. The converted policy was delivered and accepted by the insured. The insurance in this converted form contained the following provisions:

"This policy is issued in consideration of the application therefor, and the payment in advance of

"Five Hundred Eighty-eight & 40/100 Dollars * * *

"Failure to pay any premium or premium note or premium extension agreement when due and payable, shall cause this policy to cease and determine, except as hereinafter provided."

The method of the payment of the premium in advance was by the application of the $196 reserve and dividend value of the first policy and the execution of a premium note in the sum of $392.40, payable on January 19, 1931, and containing the following provision embodying the policy agreement carrying the insurance no further than the due date of the note, as follows: "* * * but this note, if not paid at maturity, is not to be considered as payment of said premium, and said policy will *thereupon,* without notice, cease to be in force and will have no value." (Italics supplied).

But $98.20 was paid on account of this note, and on January 20th the company agreed to continue the insurance by the acceptance of a second note for the balance of the premium in the sum of $294.20, payable six months after the date of the policy, that is, or until March 19, 1932. The

second note contained the same provision as that above quoted from the first note.

We thus have a continuing contract of insurance from September 19, 1928, and expiring in accordance with the express terms of the agreement on March 19, 1932.

The second note was not paid and the insured survived for nearly six months thereafter.

Both parties agree that the contract is to be interpreted under the laws of Illinois, where the insurance was applied for and the policies issued.

The appellant asserts that the express agreement of the policy, as follows: "Failure to pay *any* premium or prem-note or premium extension agreement, when due and payable, shall cause this policy to cease and determine, except as hereinafter provided," is against the public policy of the state of Illinois. She contends in effect that the acknowledgment of the receipt of the premium paid in part in the form of the note above described nullifies the agreement that the policy shall continue in existence only until the due date of the unpaid note. The inevitable conclusion from the position taken by her is that in the state of Illinois, no matter what may be the express agreements of the parties in the policy itself, whenever a policy is issued acknowledging the receipt of a year's premium, the company must be bound to a year's insurance for the principal of the policy.

It is apparent that if this is the public policy of the state of Illinois it is most damaging to persons seeking life insurance in that state. No person by using his credit with an insurance company could obtain the beneficence of such life insurance unless the company is satisfied that the credit would remain good for the period of a year. In discussing the question of the effect of nonpayment of premium notes, the Supreme Court of Illinois, in 1921, comments on a similar attempt to rely on the public policy of that state as follows: "To sustain the contentions of appellant would be to defeat one of the purposes of our statutes on insurance. These statutes declare a principle of public policy regulating all life insurance and putting that business on a sound financial basis. It is in the interest of the general public in that the statute aims to guarantee the policy holder sound insurance. *The statute was intended as a shield, and not as a sword.* It was intended to protect the frugal policy holder who pays his premiums in cash, *and not*

*to compel insurance companies to carry risks where premiums are paid in worthless notes.* By the collection of premiums alone can any insurance institution expect to pay its obligations or do business at all without impairment of its capital and ultimate insolvency. If would-be beneficiaries can force upon an insurance company dishonored paper as payment, or if the company may be permitted to accept such a substitute, all other policies it has issued will be impaired." Keller v. North American Life Ins. Co., 301 Ill. 198, 133 N.E. 726, 731.

The latest Illinois Supreme Court case cited by appellant was decided in 1875. Since that time a comprehensive group of insurance statutes have been enacted. It is this later legislation which, the Illinois Supreme Court says, requires an interpretation that shall be a shield, and not a sword, to the insuring public.

Appellant claims her contention is supported by the case of Teutónia Life Ins. Co. v. Anderson, 77 Ill. 384, 386, where, in 1875, the Supreme Court of that state held: "This court has twice decided that insurance companies, on the ground of public policy, will be estopped to prove, for the purpose of *avoiding* the contract of insurance, that the premium acknowledged in the policy to have been paid, was not, in fact, paid. Illinois Cent. Ins. Co. v. Wolf, 37 Ill. 354 [87 Am.Dec. 251]; Provident Life Ins. Co. v. Fennell, 49 Ill. 180." (Italics supplied.)

Neither in the Teutonia Case nor in the cases it cites had the parties contracted in the policy itself that, upon the nonpayment of a premium note, the policy was valid when issued but continued in existence only until the due date of the unpaid note and was then to cease and determine. The reasoning for the holding in the first of the above cited Illinois cases is as follows: "In addition, it may be said, that public policy forbids that policies of insurance should be *destroyed* in this way. When the insured property is afterwards encumbered, it is common to assign the policy to the incumbrancer. In the event of a loss, however, as the policy is not a negotiable instrument at law, the incumbrancer must sue in the name of the assured, which would let in all defenses that could be made if the policy had never been assigned. The consequence then would be, if the rule contended for by the appellant were to obtain, that instruments *good upon*

784

*their face,* and upon the faith of which money is often loaned, would be suddenly found, when brought into use, to be tainted with a *secret defect* that would make them *nullities,* although in the hands of an equitable assignee. This should not be permitted." (Italics supplied.) Illinois Central Ins. Co. v. Wolf, 37 Ill. 355, 356, 87 Am.Dec. 251.

The reasoning is inapplicable to the insurance here under discussion, since the assignee of the policy would have notice from a provision of the policy itself that it would continue only until any premium note was unpaid at maturity.

The language in the Teutonia Case is that the admission of the receipt on the face of the policy prevents a claim of *"avoiding* the contract of insurance." As stated, the insurance company here is not seeking to have declared void the contract of insurance, but is asserting that it is a valid contract which by its agreed provisions has continued for a certain length of time but terminated prior to the death of the insured.

Appellant cites several Illinois Appeals cases. None considers the effect of a policy provision that the insurance shall cease and determine on nonpayment of the premium note. Even if they had, by an Illinois statute they do not establish the law of that state, the holdings being of no binding force except in the cases in which they are rendered. The law of Illinois, apart from legislation, is announced only by the Supreme Court. Smith-Hurd Ann.St. c. 37, § 41, Cahill's Rev.Statutes of Ill. (1933) c. 37, par. 49.

This distinction between attempted avoidance of the contract by proof that the receipt admitted in the policy is not true, on the one hand, and, on the other, the reliance on the agreement that it was a valid policy but terminated by the nonpayment of a premium note, is recognized by the Supreme Court of the United States in Iowa Life Insurance Co. v. Lewis, 187 U.S. 335, 23 S.Ct. 126, 130, 47 L.Ed. 204. In that case the receipt for the first premium was delivered to the insured along with the policy. The Supreme Court held that the two documents should be construed as one instrument. The premium was paid by a promissory note. Indorsed on the receipt, to which reference was made on its face, was a provision: "If note be given for the payment of the premium hereon or any part thereof, and same is not paid at ma-

turity, the said policy shall cease and determine." Since the Supreme Court held the two documents to be construed as a single contract, the agreement of the parties was the same there as in the present appeal. The court states the question as follows: "Our present inquiry is, *when* and *how* does forfeiture occur, and it seems an obvious conclusion from the cited cases that forfeiture occurs *upon nonpayment* of the premium ad diem." (Italics supplied.) The court considers many cases, including the Illinois Supreme Court cases cited by appellant, and then holds: "The company did nothing but send the note to Starn for collection, and Starn deposited it for collection with the Farmers' & Mechanics' National Bank of Fort Worth, Texas, on August 24, 1898,—a month before it was due. The assured did nothing; made no movement, as far as the record shows, for its payment. In other words, the day of maturity came and went, and the note was not paid, *and the condition upon which the policy should 'cease and determine' occurred.*" (Italics supplied.) Iowa Life Ins. Co. v. Lewis, supra, 187 U.S. 335, at page 353, 23 S.Ct. 126, 47 L.Ed. 204.

We agree with the appellee that its contract of insurance provided for a condition subsequent upon which its policy should "cease and determine" and that the nonpayment of the premium note did cause it to cease and determine in accordance with the agreement of the parties.

■ Appellant next claims that since the application for the insurance requiring a premium of $145.23 was first attached to the earlier policy and upon the conversion attached to the later policy, with its premium of $588.40, there is an ambiguity as to whether the last-issued policy has a premium of the $588.40 disclosed on its face or the premium of $145.23 in the application. The statement of the proposition refutes the claim. There is no ambiguity. The application was for a ten-year term policy with a premium of $145.23, but which policy was also to provide for a conversion into an ordinary life policy at the higher premium. That is to say, that the application was as much for the optional higher premium policy as for the first policy.

Since there is no ambiguity as to the premium for the insurance at the time it ceased and determined on the due date of the unpaid premium note, appellant's contention that the $196 reserve and dividend value of the first policy was more than

enough to pay the premium of $145.23 likewise is ill founded. Furthermore, this contention is squarely against the stipulation of the parties that the $196 was applied towards the payment of the first annual premium due on the later policy.

Affirmed.