LEESVILLE MFG. CO. v. MORGAN WOOD AND IRON WORKS.

1. DEFENDANT IS NOT ENTITLED TO OPEN AND REPLY unless by his pleadings he admits plaintiff's cause of action and relies on affirmative defense, so that if plaintiff offered no evidence he would be entitled to judgment on pleadings.

2. EVIDENCE.—PRESUMPTION.—A LETTER received in due course of mail in response to a letter sent by receiver written on a corporation's letter head purporting to be signed by its bookkeeper is presumed, in the absence of any showing to the contrary, to be the letter of the corporation whose name is signed to it.

3. IBID.—SELF-SERVING DECLARATIONS.—A LETTER from defendant to plaintiff's attorney insisting that defendant did not owe plaintiff as much as it claimed and inviting the attorney to look over defendant's books and papers, in so far as it was an admission of something due plaintiff, could be of no benefit to defendant as evidence, and in so far as it was a denial of the claim sued on, was an unsworn self-serving declaration.

4. ARGUMENT.—ATTORNEY has no right to comment in argument on the fact that a letter had been written, which had been ruled out as evidence.

5. SECONDARY EVIDENCE OF LETTERS BY COPY.—That a party had turned over to his attorney all papers he had found pertaining to the case, that he did not remember turning over to him the letter in question, that his attorney did not have the letter, notice to produce having been held insufficient, is not sufficient to admit secondary evidence of contents of the letters in form of copies, because no special search had had made for them. Loss of a paper is a question addressed to discretion of trial Judge and from his ruling there is ordinarily no appeal.

6. DAMAGES.—A seller who fails to carry out his contract to deliver goods is liable for the difference between the contract price and the market price at time and place of delivery, whether the goods were bought for a specified purpose, or for the general purposes of the buyer's business. Such damages necessarily follow in the usual course of things, are within the reasonable contemplation of the contracting parties, and fall within the class of general damages.

7. AMENDING PLEADINGS.—An amendment designed to complete a defectively stated counter-claim is within discretion of trial Judge, and may be permitted by him after sustaining demurrer thereto.

8. RESPONDENT'S GROUNDS FOR SUSTAINING JUDGMENT.—If there be error in refusing nonsuit of counter-claim, it cannot avail respondent on motion to sustain judgment.

Before KLUGH, J., Spartanburg, December, 1905.   Reversed.

Action by Leesville Mfg. Co. against Morgan Wood and Iron Works.   From judgment for plaintiff, defendant appeals.

*Messrs. Nicholls & Jones,* for appellant, cite: *Principal cannot be bound by admissions of another without some proof of agency:* 56 S. C., 320.   *Letter of appellant to respondent's attorney should have been admitted:* 58 S. C., 201. *Upon proof that paper is lost copy may be introduced without notice to produce:* Code 1902, 2895; 17 Cyc., 518; 1 McC., 94; 61 S. C., 292; 63 S. C., 78.   *Damages for breach of contract are general and not special:* 10 S. C., 97; 1 McM., 116.

*Messrs. E. L. Asbill* and *T. S. Sease,* contra.   *Mr. Asbill* cites: *Appellant not entitled to open and reply:* Rule XII., Circuit Court; 35 S. C., 165; 50 S. C., 25; 63 S. C., 165. *Secondary evidence of contents of a paper can only be admitted after proof of loss or notice to produce:* 60 S. C., 300; 43 S. C., 378; 29 S. C., 193; 59 S. C., 581.   *Loss to defendant from failure of plaintiff to ship lumber is special damages and not recoverable unless plaintiff had notice of special circumstances:* 71 S. C., 85; 70 S. C., 16; 25 S. C., 68.   *Party cannot amend by stating wholly different cause of action:* 18 S. C., 305; 24 S. C., 476.

October 23, 1906.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   The plaintiff sued defendant to recover $135.75 for lumber sold and delivered, and recovered judgment for $69.49, from which defendant appeals upon exceptions raising the questions which we now consider.

1. Whether the Court erred in refusing defendant the right to open and reply.   The right of the defendant to open and

reply depends upon whether the answer admits the plaintiff's cause of action and relies upon an affirmative defense, so that if defendant offered no evidence the plaintiff would be entitled to judgment on the pleadings. *Thomson* v. *Insurance Co.*, 63 S. C., 292, 41 S. E., 464. By reference to the answer in this case it appears that defendant admits only that defendant is a corporation, but denies all the other allegations of the complaint. The ruling was, therefore, correct.

2. The plaintiff made draft on defendant for $145.75, and in reply received a letter through the course of mail signed "Morgan Wood and Iron Works, per Gilmore," Gilmore being the bookkeeper of the company, and the letter head purporting to be that of defendant corporation, the letter in substance admitting notice of the draft, claimed that it was "more than the amount you agreed to take," returning the draft, stating that the president was out of town and that the matter would be turned over to him for adjustment on his return. This letter was introduced in evidence by plaintiff over defendant's objection that it was not signed by the president or some one proved to have authority. We think the ruling was correct. A letter received in due course of mail, in response to a letter sent by the receiver, is presumed, in the absence of any showing to the contrary, to be the letter of the person or corporation whose name is signed to it. *Scofield* v. *Parlin & Orendorff Co.*, 10 C. C. A., 83; *Ragan* v. *Smith* (Ga.), 29 S. E. Rep., 759; 1 Elliott on Evidence, sec. 107.

3. The defendant sought to introduce in evidence a letter addressed to Sease & Hoke, attorneys for plaintiff, stating that the claim would have been paid long since but that defendant did not owe the amount claimed, and inviting Sease & Hoke to call and inspect the books and papers and go over the matter with the president. The Court declined to allow the evidence on the ground that it was self-serving. We approve the ruling. In so far as the statement of the defendant's officer could be construed as an

implied admission against interest, *i. e.*, that something was due on plaintiff's claim, its exclusion was not harmful to defendant; and in so far as the statement was a denial of the correctness of the claim sued on and a readiness to show defendant's books and papers, it was an unsworn self-serving declaration of defendant or its officer and, therefore, inadmissible. *Ring* v. *Huntington*, Mill., 162; 16 Cyc., 1202-1206.

4. During the argument of the case to the jury, counsel for defendant commented upon a letter which was offered in evidence but which was ruled out, and, upon objection being made, the Judge ruled that he could not refer to the letter, and instructed the jury not to consider it. This ruling is the basis of an exception, but it is quite clear the Court acted properly in the exercise of its power to make its ruling effective by enforcing obedience thereto. The propriety of the Court's ruling is not affected by the fact that the comment on the letter related only to the fact that it was written, and not to its contents. The exclusion of the letter from evidence removed it altogether from the consideration of the jury.

5. With a view to prove the third counter-claim set up in answer, alleging $51.25 damages to defendant by plaintiff's failure to fill defendant's order for lumber alleged to have been accepted by plaintiff, the defendant sought to introduce in evidence copies of letters written by defendant to plaintiff, one containing said order and the other making reference thereto. It appears that a *subpoena duces tecum* was served on Barr, of plaintiff's firm, who lived at Leesville, a short while before going into the trial at Spartanburg, to produce the original, but the Circuit Court ruled that the notice was insufficient to enable witness to make search and produce the papers or to let in the copies on non-produtcion of the originals. Thereupon defendant sought to have the copies let in on the ground that the evidence showed loss of the originals, Mr. Barr having testified that he turned over all papers in the case that he found to Mr.

Asbill, his attorney, although he had no recollection of having found or turned over to Mr. Asbill the particular papers in question, Mr. Asbill having testified that he had turned over all the papers received by him to Mr. Sease, and Mr. Sease having testified that he did not receive or have the papers in question. The Court ruled the copies inadmissible because there was no testimony that search had been made for the originals, so as to establish their loss, and this ruling is the basis of the fifth, sixth, seventh and eighth exceptions. We sustain the ruling. The loss of a paper is always a preliminary question addressed to the discretion of the presiding Judge, and his ruling is not ordinarily the subject of review by this Court, *Hobbs* v. *Beard,* 43 S. C., 378, 21 S. E., 305, and there is nothing in the record to show any abuse of discretion in this case. The evidence tended to show that an order for a second lot of lumber had been received by plaintiff, but no search had been made for same, and it could not be produced in Court. The general rule is that parol evidence of the contents of a paper in the possession of the adverse party, which constitutes the evidence of the rights pleaded, cannot be given except after reasonable notice to produce. *Worth* v. *Norton,* 60 S. C., 300, 38 S. E., 605.

6. The ninth and tenth exceptions are to the charge given the jury. The defendant requested the Court to charge with reference to the third counter-claim, as follows:

"Fifth. If you find that the plaintiff sold the defendant a second car of lumber, and if the plaintiff declined and failed to fulfill the contract, they would be liable in damages to the defendant for any loss it might have shown it sustained thereby, and the measure of the defendant's damages would be the difference in the price of the lumber according to the contract and what the defendant was compelled to pay for such lumber to supply what the plaintiff failed to furnish; in other words, the market price of the lumber at the, time when it should have been delivered." To which the Court responded: "I have already given you specific instructions in reference to the third alleged counter-

claim. . If you find that there was a contract, and if the plaintiff broke it, then the plaintiff would be liable only for the loss ensuing, but not for any special loss or damages, and subject to what I have charged you in that matter, I charge you this proposition."

In order that it may fully appear what instructions had previously been given on the subject, we quote at length as follows: "Now, in reference to the third counter-claim, where the defendant alleges that plaintiff agreed to ship a carload of lumber for a certain purpose, and for a certain price, and failed to keep the agreement, if any damages naturally resulted, as a natural consequence of that failure, then defendant would be entitled to have compensation for the damages. If the contract is not established, as a matter of course, the defendant would have nothing on the alleged counter-claim. The burden is on the defendant, to prove that there was such a contract, and prove the terms of the contract by the preponderance of the evidence; and if you find that the contract was proved, and the defendant suffered any damages as a natural consequence of the failure of the plaintiff to keep the contract, why it is entitled to have compensation to that extent for damages; but unless defendant suffered damages as a natural and proximate result of that failure, it would not be entitled to recover any such damages unless plaintiff had notice that special damages would ensue if it failed to keep its contract; and so, if you find that the contract was made between the parties to furnish a car of lumber at a specified price, without any notice to plaintiff that it would be used for any special purpose, or that the defendant would be compelled to take any other steps to procure lumber in the place of that which plaintiff was to furnish, in case of failure of plaintiff to furnish it, I say, unless you find that defendant was compelled to resort to other means to get lumber for the specified purpose, and that the plaintiff knew that defendant would be put to such expense, then there could be no damages of a special character for which plaintiff would be liable. For instance, if you should

find that the defendant and the plaintiff entered into a contract to furnish that last mentioned car of lumber at a specified price, and if there was no special purpose mentioned, but merely to be used in the defendant's business, general business, then there can be no special damages ensuing to the defendant, even though the defendant afterwards went into the market and bought other lumber in the place of that at a different and greater price, because that would not be incumbent on the defendant to do that he could do it or not, just as he pleased, there was no necessity for the defendant other than the purpose of its own business to do it; so, if you find that to be the case, then the defendant would not be entitled to any damages for the difference between the price of lumber agreed to be furnished and this last mentioned car which defendant purchased elsewhere for the general purpose of his business. It is only the direct and proximate consequences of a man's act that he can be held responsible for, and if a man agrees to furnish goods for another and fails to do it, and the other party is not compelled to buy goods in the place of these for some specific purpose, but goes on in the general course of his business and buys other goods, the party who had failed to furnish goods under such contract as that, would not be liable for any special damages, enhancement in price, or anything else that the other party might pay in the general course of business for goods to take the place of those that the party had agreed to furnish, that is, in reference to the third counter-claim. So, if you find, first, that there was such a contract between the parties to furnish that carload of lumber, and you should find further that the defendant suffered damages as a natural consequence of the breach of the contract, it is entitled to compensation for such damages as that; but if it merely suffered damages arising from the fact that it went into the market in the general course of its business and bought other lumber at a different price, the plaintiff would not be liable for damages on that score, because it would be held that it was not within the contemplation of the parties at the time the contract was

made.    You will observe in one of these counter-claims it is alleged that the parties merely agreed, without any reference to special purpose, but merely for the purpose of defendant's general business, and unless there are damages naturally resulting from the failure to perform the contract by the plaintiff in this case, then he cannot be held responsible for any special damages, unless it is notified that special damages would ensue in case this plaintiff failed to keep its contract."

The appellant complains of this charge on the ground that a seller who fails to carry out his contract is equally liable for the difference between the contract price and the market price, whether the goods were bought for a special purpose or for the general purposes of the buyer's business, and that the effect of the charge was to deny recovery by defendant on the counter-claim, as no special damages were claimed or proven, but only general damages to be measured by the difference between the contract price and the market price of the goods at the time and place of delivery. The general rule undoubtedly is that when the vendor fails to deliver goods sold, the vendee is entitled to recover the difference between the contract price and the market value of goods at the time and place appointed for delivery, and possibly interest. *Davis* v. *Richardson,* 1 Bay, 106; *Ellison & Co.* v. *Johnson & Co.,* 74 S. C., 202; 2 Sutherland on Damages, 365. The defendant was entitled to have the jury so instructed, if there was evidence of such a contract and its breach. We cannot say that the charge as a whole substantially gave the defendant the benefit of the rule stated, as the Court charged defendant's request subject to his general charge, and in that charge it is positively stated that "if defendant suffered damages arising from the fact that it went into the market in the general course of its business and bought other lumber at a different price, the plaintiff would not be liable for damages on that score, because it would be held that it was not within the contemplation of the parties at the time the contract was made."

The difference between the contract price and the market price of goods at the time and place of delivery is something which must follow necessarily and in the usual course of things, and must, therefore, be held to be within the reasonable contemplation of the contracting parties and to fall within the class of general damages as distinguished from special damages, which do not arise necessarily and in the usual course of things from a breach of contract, but which do arise from circumstances peculiar to the special case. Such is the distinction between general and special damages, as stated in the famous case of *Hadley* v. *Baxendale,* 9 Exch., 341, approved and applied in this State in very many cases. There was error, therefore, in the charge.

The respondent seeks to sustain the judgment on the grounds stated in the "case" for appeal:

1. That the Court erred in allowing the answer setting up the third counter-claim to be amended after sustaining plaintiff's demurrer thereto for insufficiency.

2. In refusing plaintiff's motion for nonsuit as to the third counter-claim, when there was no evidence of any contract, or damages, in connection therewith.

Even if we should consider whether there was error in allowing the amendment, we would have to sustain the ruling of the Court, as the amendment did not insert a new or different cause of action, but was designed to complete a defectively stated cause of action, and it was within the discretion of the Court to grant it. *Ruberg* v. *Brown,* 50 S. C., 398, 27 S. E., 873; *Brown* v. *Ry.,* 58 S. C., 466, 36 S. E., 852.

If it should be conceded that the second ground urged does show that error prejudicial to respondent was committed, it cannot be relied on to *sustain* the judgment of the Circuit Court, for if we should conclude that there was no evidence of the third counter-claim, we could not dismiss the counter-claim, but could only grant a new

trial. *Chemical Co.* v. *Kirven,* 65 S. C., 207, 43 S. E., 658; *Lewis* v. *Hinson,* 64 S. C., 571, 43 S. E., 15.

The judgment of the Circuit Court is reversed and the case is remanded for a new trial.