14211

FUNDERBURK *ET AL.* v. SOVEREIGN CAMP, W. O. W.

(183 S. E., 462)

*Messrs. Padgett & Moorer,* for appellant,

*Messrs. Jefferies & McLeod,* for respondents,

January 16, 1936.

The opinion of the Court was delivered by Mr. Chief Justice Stabler.

In November, 1916, John R. Funderburk became a member of Camp No. 665 at Omega, one of the local lodges in this State of the Sovereign Camp of the Woodmen of the World. Thereafter he was issued by the defendant, on his application, insurance on his life in the sum of $1,000.00, the plaintiffs, his wife and children, being named as beneficiaries. In July, 1920, the insured having lost his certificate, the defendant issued him a duplicate thereof, to which was attached a rider providing for the erection at his grave of a monument to cost not less than $100.00. In 1927 the same thing happened again, and it is on the certificate then issued that the present action was brought.

Funderburk remained with the Omega camp until June 1, 1924, when he changed to Camp No. 223 at Greeleyville, S. C. In June, 1928, that lodge having become defunct, he transferred his membership to Loyal Camp, No. 555, located at Omaha, Neb., of which he was a member at the time of his death.

The insured died on May 24, 1932. The defendant refused to pay the insurance, and the plaintiffs then brought this action, claiming damages in the sum of $2,950.00. Judge Shipp, who presided at the trial, held that the complaint stated only a cause of action for simple breach of contract, and so charged the jury, which eliminated any question of punitive damages. The defendant interposed a general denial; and, as a second defense, alleged that the insured failed to pay his monthly assessment for April, 1932, on or before the 30th of that month, as he was required to do un-

der the terms of the insurance contract, and for that reason his certificate was null and void at the time of his death. The jury found for the plaintiffs $1,100.00 and interest; and, from judgment entered on the verdict and the Court's order refusing a new trial, this appeal is taken.

It was stated in the certificate of insurance that it was "issued and accepted subject to all the conditions set forth herein and on the reverse side hereof, and the provisions of the constitution, laws and by laws of the association." The insured was required to pay to the sovereign clerk a monthly installment, or premium, of $3.20; and we quote here the following pertinent provisions of the constitution:

"If he (the insured) fails to make any such payments on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the association shall thereby completely terminate, and all moneys paid on account of such membership shall be retained by the association as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension. * * *

"Any member who becomes suspended because of the non-payment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. * * *

"Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installment of assessment shall be a warranty that such person is at the time in good health and that if the warranty is not true the certificate shall be null and void."

We will now consider the several questions raised by the exceptions, the first of which is that the trial Judge committed error in refusing the defendant's motion for a directed verdict, made on the grounds (1) that the undisputed testimony showed that the monthly premium installment for April, 1932, required to be paid before the 30th of that month, was not paid until May 24th, at which time the insured was on his deathbed; and (2) that there was no evidence of waiver or estoppel.

We have read with care the voluminous testimony taken in the case, but deem it unnecessary to review it at length. For the plaintiffs, Mrs. Cornelia Funderburk stated that her son Oscar, after the insured took sick, sent $3.45 by post office money order to the defendant, which was to pay the premium installment for the month of May, "the best I can remember"; that she did not think the defendant gave any receipt for this, but that it returned to her by check the $3.45, and that Dr. Moorer told her to send it back to them, which she did. O. L. Funderburk testified, among other things, that he mailed the defendant the money order for $3.45, which was dated May 21st and sent in payment of the premium for that month; that the witness was not issued a receipt therefor; but that the defendant later attempted to refund this amount by check to Mrs. Funderburk. He also stated that there was found among his father's papers a canceled check for $3.45, dated April 22, 1932; that it was made payable to Morris Sheppard, Treas., and signed by J. R. Funderburk; that this check paid the premium for the month of April, and a receipt from the company dated May 27th was an acknowledgment of such payment. On cross examination this witness admitted that he knew nothing of the canceled checks which he found among his father's papers and which were introduced in evidence, except what appeared on their face; and that, while he was a little confused and could not exactly get the matter figured out, still he would not withdraw his statement that he knew that the April installment had been paid. Dr. Fun-

derburk stated that he did not think the receipt referred to was sent in response to the post office money order that the company received during his father's illness. He further testified that his father was often behind with the payment of his premium installments, and that he frequently paid two months in one; and that he was given the privilege of paying when he could, and, when he did, the defendant would issue him a receipt for it. L. I. Kinsey, clerk of Omega Camp said that, where a member owed a premium, say, for the month of October, but paid it during the month of November, it was all right, and that this had been the custom since he had been clerk; and that the receipt cards issued ran in order but that the receipts were always a month behind; and that, where payment was made on April 22d, a receipt dated May 27th would be about right in order. C. N. Langdale testified that he was a bonded official of Camp 736 near Walterboro; that he could send premiums collected to headquarters at once or could hold them until the next month and send them with his report; that, when a member was suspended, it was the practice of the company to send him a suspended notice, and as a rule such notice was sent promptly, but even when a man was sick it was their practice to take his money and send it to headquarters. A. C. Breland said that he was a member of the order of the Woodmen of the World and carried insurance with it; and that he allowed his dues to run from one month to another, but that they were always accepted without question.

For the defendant, Dr. Moorer testified that Mrs. Blake told him that her father had not paid the premium and that she paid it for him. John T. Yates, secretary of the Sovereign Camp, stated that the membership of the insured had been transferred in January, 1928, to Omaha at the home office of the association; that on May 24th that office received the April, 1932, installment of the insurance dues of Funderburk, and that a receipt was issued therefor and mailed to him on May 27th; that on May 30th they learned through a letter witten by Mrs. Funderburk that the insured

was dead; and that the claim for the death benefit was then rejected and the sum of $3.45 covering the amount received for the April installment was returned to her.

As is seen, the question is as to when and how the payment of the premium for the month of April, 1932, which was "Installment No. 4," was made. The plaintiffs say, and so testify, that the insured paid it by his check of April 22d, and that the receipt issued by the defendant on May 27th was an acknowledgment in the usual manner as to the insuance of receipts by it, of the payment of such installment. The defendant claims, and offers testimony in support thereof, that the check of April 22d was in payment of the installment for the month of March, 1932, and that the post office money order for $3.45, which it received on May 24th, was for the April premium installment No. 4, and that the receipt issued by it on May 27th was given for such payment. The plaintiffs respond that no receipt was ever received for the $3.45 sent the defendant on May 21st, and that this payment by money order was for the premium and dues for the month of May.

We think that the trial Judge properly refused to direct a verdict. The conflicting evidence, as to when and how the premium and dues for the month of April were paid, made an issue of fact for the jury; the weight of the testimony and the credibility of the witnesses being matters entirely for them. The question of waiver was also correctly disposed of by the Court. It was undisputed that the insured had been in ill health for a number of years before his death and during that time had frequently been in arrears in the payment of his premium installments; that he had often made such payments after the time allowed for doing so had expired, and in some instances had paid two installments together, which the defendant approved by its acceptance without question of such remittances. This testimony made the issue of waiver a matter for the jury, if they concluded, as claimed by the defendant, that there

was a forfeiture of the contract because of non-payment of the April installment.

The appellant, by its second assignment of error, questions the action of the trial Judge "in permitting plaintiffs' witnesses over the objection of the defendant to testify as to customs observed in camps of which the deceased was not a member in regard to paying premium assessments in arrears, and in charging the jury that they might consider such custom on the question of waiver."

L. I. Kinsey, a witness for the plaintiffs, as is seen by reference to his testimony, stated that it was the custom or practice of the Sovereign Camp to receive and receipt for premum installments paid by the members of the local camp to which the witness belonged, but of which the insured was not a member, after the time for the collection and payment of such assessments, under the rule of the society, had expired. C. N. Langdale also testified to the same effect. This testimony, objected to by the defendant, was admitted by the Court on the theory that, as all of the camps were regulated by and under the same laws, it was competent to show in this way that the Sovereign Camp had established a general custom of disregarding one of its rules applicable to all.

Even if this was error, we think it was harmless. The undisputed evidence that the Sovereign Camp, as we have stated, frequently accepted payment by the insured, and over a long period of time, of premium installments in arrears, and that the insured paid these premiums whenever he could, and when paid they were accepted by the defendant, was sufficient to take the case to the jury on the issue of waiver, and alone, if believed, was decisive of the question.

It is also argued that the testimony of Langdale that the defendant under alleged similar circumstances had paid without question the insurance on the life of one J. W. Bennett, who at the time of his death was in

arrears in the payment of his premium installments, was improperly admitted. It appears that Bennett was a member of the lodge at Omaha to which Funderburk belonged. This testimony, therefore, tended to show a custom or practice of the defendant in its dealings with the members of that particular lodge, and was admissible on the issue of waiver. *Fortune v. Sovereign Camp, W. O. W.*, 175 S. C., 177, 178 S. E., 872.

The appellant finally contends that the Court erred in excluding, as self-serving declarations, two letters from the claim department of the defendant, one to Mrs. Cornelia Funderburk and the other to O. L. Funderburk.

The exceptions raising this question are without merit. It is true that these letters were in reply to communications of the beneficiaries named, but this would not change the rule with reference to the admissibility of self-serving declarations. The letters were written after the death of the insured and after claim had been filed and served to set forth the alleged reasons or argument of the appellant as to why payment of the claim was refused. They were clearly self-serving in nature, and for that reason were properly excluded by the trial Judge. *Leesville Mfg. Co. v. Morgan Wood & Iron Works*, 75 S. C., 342, 55 S. E., 768.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.