14485

### TINSLEY v. PRUDENTIAL INSURANCE COMPANY OF AMERICA

(191 S. E., 307)

January, 1936.

*Messrs. Osborne & Butler* and *McDonald, Macaulay & Mc-Donald,* for appellant,

*Messrs. Hemphill & Hemphill* and *Hamilton, Gaston & Hamilton,* for respondent,

May 12, 1937.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This case by Mrs. Mary H. Tinsley, as plaintiff, against the defendant, Prudential Insurance Company of America, was commenced in the Court of Common Pleas for Chester County, July 22, 1935. The suit involves an insurance policy issued upon the life of Theodore N. Tinsley, the husband of the said Mary H. Tinsley, named as beneficiary thereunder, bearing date March 13, 1924, and the face amount of the policy is $5,000.00, but the action involved is only for the amount of $3,000.00 in full liquidation of the claim of the said Mrs. Mary H. Tinsley and, also E. L. Royal, an alleged assignee of an interest in the policy. The insurance company denied liability under the policy. The cause being at issue, the case was tried in said Court before his honor, Judge G. Dewey

Oxner, and a jury, January 13, 1936, resulting in a verdict for the said Mrs. Mary H. Tinsley, a verdict having been directed and the complaint dismissed as against the said E. L. Royal at the close of the testimony. In this connection we quote from the record the following portion of the agreed statement:

"There having been a disagreement between counsel at the close of the Judge's charge as to the amount that the verdict should be for, in case of a verdict being found in favor of the plaintiff, it was agreed by counsel that the points in dispute on that matter should be later determined by the Judge, in event of a verdict for plaintiff, and after due consideration and argument of counsel, his Honor passed an order of date January 31, 1936, adjudging that the verdict should be for the sum of $3,000.00, plus $230.00 interest up to the date of the verdict, which was rendered on January 16th, and directing that the verdict be accordingly amended so as to allow the above sum, and that plaintiff have leave to enter judgment against the defendant accordingly, and judgment was thereupon so entered."

From this judgment, pursuant to due notice, the defendant has appealed to this Court, alleging errors imputed to the trial Judge.

Under Exception 1 appellant imputes error to the trial Judge in overruling defendant's motion for directed verdict in favor of the defendant upon the following ground: "That the evidence showed conclusively that the insured T. N. Tinsley's policy had lapsed for non-payment of premium on the 13th day of September, 1933, and that such lapse had taken place long prior to his death and after the period of extended insurance had expired; and further showed that the insured had filed an application for reinstatement of the policy which was rejected on good grounds, and there is no sufficient evidence showing waiver or estoppel to avoid the forfeiture caused by the lapse of the policy and the failure to pay the premium; the error being that the motion based

upon said grounds was well founded, and his Honor should have so held and should have directed a verdict in favor of defendant."

A study of the record fails to convince us that the trial Judge committed error in declining to grant defendant's motion for a directed verdict in favor of the defendant. As appears from the record, the policy involved was issued March 13, 1924, and the insured died September 26, 1934. It seems to be conceded that for the first six years the premium on the policy was paid promptly. However, later on the holder of the policy did not make his payments so prompt, and testimony was introduced tending to show that a custom was established between the parties for the premium to be paid by or on behalf of the insured and accepted by the insurer after, and at times long after, the premium became due. In this connection we quote the following from the testimony of Mr. Ferguson, the general manager of the insurance company; on re-cross examination by Mr. Hemphill:

"Q. Now, Mr. Ferguson, I have just one or two questions, and I want to try to get you to see if I understood you correctly: Did I understand you to tell Mr. Osborne that you have a perfect right, and had been instructed by Mr. Tinsley, whenever a premium became due, to make application or inquiry for the loan value, and ascertain the amount; and after you had ascertained the amount from the home office, that then you would send over the loan agreement, and then Mr. Tinsley had been given somewhat his own good time within which to fix the loan agreement? A. Not his own good time.

"Q. Well, didn't you say that? A. No; not his own good time; not his own good time.

"Q. Well, he took a great deal of time all through the years, hadn't he? A. He had taken some.

"Q. And it was the custom of the company that, after you had made this inquiry, and if part of the premium was to be paid with a loan, that it didn't make any difference about

its being completed exactly on time, is that correct? A. The loan agreement itself?

"Q. The loan agreement itself? A. Yes.

"Q. And therefore, in this, you had made the inquiry, that the company took that as being in effect an application for a loan? A. An inquiry for a loan.

"Q. And therefore they were not strict about its being completed within the grace period? A. *That is what I said.*" (Italics added.)

It is the contention of the appellant that the policy in question lapsed September 13, 1933. In this connection we call attention to the further testimony of Mr. Ferguson, given on re-cross examination:

"Q. And therefore did I understand you that, in reference to the premium, that premium due in September, 1933, that within the grace period you made the inquiry of the company? A. Yes.

"Q. And in behalf of Mr. Tinsley? A. Yes, sir.

"Q. You got back that information in October, didn't you? A. Whatever date that is.

"Q. Let me see; that was after the grace period had expired, hadn't it? A. It was after the 13th of October, yes.

"Q. And wasn't it October 24th; and then following your usual custom, you mailed over to him a loan agreement to be filled out, didn't you? A. Yes, that is correct.

"Q. After you heard from the home office? A. Yes.

"Q. And he didn't do anything about it right away, did he? A. No.

"Q. But subsequently he wrote you this letter? A. In March, yes.

"Q. And then you came over, following your usual custom, just as you had been doing, is that right? A. Yes.

"Q. And you fixed up his loan agreement and arranged for it to be paid, partly with loan and partly with cash? A. Yes.

"Q. Mr. Tinsley fixed the loan part, didn't he? A. Yes.

"Q. And Mr. Royal furnished the cash? A. Yes.

"Q. And that has been your custom ever since 1930, all along? A. What is that?

"Q. That had been your custom of dealing with Mr. Tinsley for at least from 1930, hadn't it? A. Not for as long as that.

"Q. But it had been for the grace period—after the grace period, whether two months, five months or what not? A. That is right.

"Q. And any previous time, that was all that you wanted for him to fill out, the loan agreement, and supplement whatever cash was necessary? A. Yes.

"Q. And you were authorized to do that, by the company? A. That is right, yes."

It can be reasonably inferred from the testimony in the case that an application for reinstatement was not required if the premium on the policy was to be settled partly in cash and partly by using available loan fund. This custom, between the parties, existed from year to year. The testimony is reasonably susceptible of the inference, as contended by the respondent, that on several annual occasions when the insured was behind on his payments the company did not require the filing of application for reinstatement or manifest in any way that from its viewpoint the policy in question had lapsed. As contended by the respondent, the parties acted upon this theory from year to year. As indicated above, the premium was paid by paying part cash and using available loan fund, but so far as the record discloses, there was no specific time required by Mr. Ferguson, as representing the company, to make this payment, and evidently the insured was allowed great latitude. This seems to have been the practice and custom existing between the parties all along, and the insured was evidently led to believe that no other method of payment would be exacted of him. As stated, in effect, Ferguson, the manager, had authority from the insured to make application or inquiry for any available loan value. In this

connection we quote the following testimony of Mr. Ferguson:

"Q. I think, Mr. Ferguson, you told me just exactly what I wanted to know; thank you, sir. And what we have been driving at all along, from 1930 right on down to the finish, you had authority from Tinsley to make applications for a loan, didn't you? A. Yes, sir.

"Q. And you would make the applications for a loan for Mr. Tinsley, wouldn't you? A. Yes, sir.

"Q. And then you had authority from the home office to extend to Mr. Tinsley time within which to complete those loan agreements, didn't you? A. No.

"Q. Well, you did it? A. I did it, but I didn't have authority to do it.

"Q. You said a minute ago you had authority? A. I said I had authority to recognize the signature.

"Q. *But, at any rate, that was your invariable custom, wasn't it?* A. Yes, sir. (Italics added.)

"Q. *And, I want to refresh you once more: And, through the years, down to the finish, you followed the same custom that went through?* A. *Yes."* (Italics added.)

It may reasonably be inferred from the testimony to which we have referred that the company acquiesced in the action and actions of the said manager, and, in effect, authorized the same.

We are forced to agree with the contention of the respondent that even the home office of the insurance company regarded the policy as continuing in full force and effect while the insured, through the several years, 1930, 1931, 1932, and 1933, performed the several acts referred to, and made payment of the premiums for those years in the manner mentioned.

Under the terms of the policy in question the due date of the premium was March 13th, but by agreement entered into between the insurer and the insured the date of payment of premium was changed to September 13th of each

year. This agreed change having been made, a premium fell due September 13, 1933. It appears from the record that the insured had left to Mr. Ferguson, the manager, the duty of making application for the available loan value to be used in connection with the payment of the premium in accordance with the established custom. It further appears that Ferguson waited until the last day of grace for making this application. This application, which is in writing, gives no instructions to the manager, Mr. Ferguson, to have the insurance revived and makes no reference thereto. In this connection we call attention to the fact that the record discloses that the home office advised Mr. Ferguson that the loan value available was $103.01, and the home office, in this connection, requested Mr. Tinsley to sign a loan certificate for, not $103.01 but for $1,046.59, and it seems that such loan, together with $88.89, would pay the outstanding loan and the same would be closed out August 21, 1933. At any rate, under the calculation made, the policy would be of force until October 13, 1934. According to the record, the manager, Mr. Ferguson, claims to have inclosed an application form for loan to be executed by the insured but there was no copy of such letter or any written evidence to that effect. So far as the record discloses, the last communication which passed between the insured and Ferguson, after August, 1933, was a letter of March 12, 1934, written by the insured to Ferguson, and it appears from this letter that the insured desired to know the amount of cash that would be necessary, together with the loan value, to pay the premium up to September, 1934. So far as the record discloses, no change appears to have been made in the manner of dealing between the parties which had been in operation for several years, and we must assume that the insured had no information of any proposed change and he must have believed the policy in question to be of full force and effect. It is important to mention in connection with this letter that no claim of lapse of the policy is mentioned in the letter, and, further, there is nothing to show in connection

therewith that a revival of the policy was asked for or desired, and the insured must have believed the policy to be of full force. This, in effect, is the contention of the respondent, and we think such contention is fully warranted by the record. It may be mentioned that, according to testimony of one of the witnesses, Mr. Ferguson saw the insured in the city of Chester along about the 15th or 16th day of March, 1934, and made statements to the effect that the insured would have to pay in cash the sum of $88.00 and some odd cents in order to get his policy carried until September, 1934. According to the testimony, this amount was paid for the insured by Mr. Royal. Considering all the testimony on whether the policy was in force, we think the jury was warranted in reaching the conclusion that such was the case and that the trial Judge properly submitted the case to the jury. Of course, the insurance company, through its manager, had the right to apply the amount that the insured was entitled to under the loan value of the policy and this amount, together with the amount Mr. Royal paid for the insured, to be applied on the premium carried the policy until the following year, September, 1934. The policy was, therefore, of full force and effect at the time of the death of the insured, September 26, 1934, that is, within the grace period for paying the premium thereon, at least, this was a reasonable inference to be drawn therefrom by the jury under the testimony and the record in the case.

Under the second allegation of error imputed to the trial Judge the appellant contends that his Honor was in error in refusing to charge the following request: "The undisputed evidence also shows that on April 12th, 1934, the said Application for Re-instatement of the lapsed policy, together with the Loan Certificate was forwarded by R. H. Ferguson, manager of the defendant in this district, to the home office of the Prudential at Newark, N. J., for attention, and reached there about April 16th, 1934, and it is further shown conclusively that on April 18th,

1934, the said company, through its officers, considered and rejected the said Application for Re-instatement, and on the same date wrote a letter, of which a copy is in evidence, directed to insured, advising him of such rejection, and on or about April 20th, Manager Ferguson wrote a letter to Mr. Royal, the alleged agent of Tinsley, advising him of such rejection. It is further conclusively shown that the company's manager immediately, upon April 20, 1934, returned to E. L. Royal, by whom the above mentioned $88.89 was advanced by Royal for Tinsley, back to Royal, sending the same by check, which check Mr. Royal has retained and produced in Court."

Under our view, it is sufficient to state, in addition to what we have stated in passing upon the first exception, that whether there was an application made by the insured for reinstatement and whether, if made, the same was properly refused was a question of fact for the jury.

The allegations of error set forth under Exceptions 3, 4, 5, 6, 7, 8, 9 and 10, respectively, are overruled, for the reason that the questions referred to in these exceptions were plainly questions of fact for the jury, and the trial Judge could not, under the law and evidence in the case, rule as requested by appellant.

"3. There is no sufficient evidence to justify a reasonable conclusion that the company or its manager waived the requirements of the policy relative to reinstatement, or the provisions of the application for reinstatement, as signed by Mr. Tinsley."

"4. The evidence fails to show any acts done by Ferguson which, as between himself and Tinsley, could have operated as a waiver of the rights of the company nor as an estoppel against it to rely upon its claim of forfeiture under this policy."

"5. I charge you that there is no sufficient evidence in the case to justify a reasonable conclusion that the company at the home office, after receiving the said loan certificate and

application for reinstatement, was guilty of any unreasonable delay which under the proven circumstances operated as a waiver or an estoppel against the company."

"6. I charge you that there is no sufficient evidence to justify a reasonable conclusion that there was anything in the correspondence, letters, etc., passing between Ferguson manager, and E. L. Royal, alleged agent, to constitute a waiver or estoppel."

"7. I charge you that the evidence is insufficient to justify a reasonable inference or conclusion that Mr.. Tinsley or Mrs. Tinsley suffered any detriment by reason of any alleged unreasonable delay on the part of the company, or by reason of acting upon anything said or writen by Manager Ferguson."

"8. The evidence does not justify a reasonable conclusion that Mr. Royal was acting as agent for Tinsley."

"9. Under the evidence in this case, I charge you that there is no element of estoppel involved for you to determine. There is no testimony justifying a conclusion that the plaintiff or Mr. Tinsley was misled or deceived into taking any action to their detriment, or prevented from taking any action for their protection or advantage."

"10. There is no sufficient evidence to justify a reasonable conclusion that there has been such a course of dealings with Mr. Tinsley in reference to the making of loans and to postponing the time for collections of premiums as would prevent or estop this defendant from insisting upon strict compliance with the policy and the applications for reinstatement in this case."

For the reasons stated, these exceptions are overruled.

Under the eleventh allegation of error the appellant imputes error to the trial Judge in charging the following language in the course of his charge to the jury: "Now, if the insurance company knew it had that right, and notwithstanding elected to do such thing, commit such acts as would

lead the insured or other person duly authorized to act for him to believe that they were not standing upon the rights of forfeiture but that they were going to extend to the insured certain other privileges which, if he accepted, would continue the insurance in force,—and I am not speaking of extended insurance—that they would continue the policy in force notwithstanding the fact that they could have declared it null and void, if by such acts, words or deeds or creation of such circumstances they led the insured to believe and did such things as would have led a person of ordinary prudence and business judgment to believe that they would not declare a forfeiture and by reason thereof induced the insured or somebody duly authorized to act for him, to invest money or go to some expense in order to continue the policy in force, then if you find such facts, the company would have waived their right to declare a forfeiture of the policy; and it would have continued in force in its regular form."

The specifications of error under this exception are set forth under three divisions, A, B, and C. The specifications under A and B are overruled for the reason that under the testimony in the case this Court cannot hold that there was not sufficient evidence to go to the jury to establish the same.

■ Under specification C appellant contends that:

"It was a charge upon the facts, in violation of Article 5, Section 26 of the Constitution of this State, in that his Honor told the jury that if they found certain facts to exist and certain acts and conduct to have been done or performed on the part of the defendant, 'the company would have waived their right to declare a forfeiture of the policy, and it would have continued in force in its regular form,' the error being that his Honor, instead of leaving it for the jury to reach their own conclusions as to whether or not the particular supposed facts referred to by his Honor would constitute a waiver, he, in violation of the Constitution, it is submitted, exercised the functions of the jury

and reached the conclusion for them in respect to this matter."

Even if it be conceded that his Honor should have left it to the jury to determine whether or not the particular facts referred to would constitute waiver, we do not think, under the circumstances when all of the testimony is taken in connection with the charge complained of, that the appellant sustained any injury, or that the jury was misled in connection with the matter involved.

All of the exceptions are overruled and the judgment of the lower Court is affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham, Baker and Fishburne concur.