14496

WHITE v. SOVEREIGN CAMP, W. O. W.

(192 S. E., 161)

December, 1936.

*Messrs. Watkins & Prince,* for appellant, cite:

*Mr. Leon W. Harris,* for respondent, cites:

June 11, 1937.

As amended on denial of rehearing June 29, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Action on certificate of insurance issued by appellant on May 31, 1934, on life of Dewey C. White, whereby appellant agreed to pay upon satisfactory proof of the death of the said Dewey C. White, while in good standing, the sum of $1,000.00 to Julia White, the beneficiary therein named. From judgment for plaintiff for the full amount and interest, an appeal has been taken to this Court.

The complaint, after setting out the contract or policy of insurance, alleged that all premiums called for by said policy were paid, and that it was of force at the time of the death of Dewey C. White on May 18, 1936; that after said death

appellant caused said policy to be surrendered to it along with the proof of death; and that the policy continued to remain in possession of appellant, and that appellant had refused to pay same.

Appellant, by its answer, for a first defense, admitted the issuance of the contract of insurance, but alleged that its obligation under the said certificate was conditioned and limited upon conditions and limitations fully set out in said certificate and in the instruments referred to therein; admitted that papers purporting to be the proof of death of Dewey C. White were furnished to it and received by its secretary on June 29, 1936, but denied all other allegations of the complaint. For a second defense, pleaded that said certificate of insurance provided that no legal proceedings for recovery thereunder should be brought within ninety days after receipt of the proof of death by the secretary of the association, and that action had been brought on the certificate within less than ninety days, the summons and complaint having been served on September 15, 1936. For a third defense, that its certificates are issued for and in consideration of warranties contained in the application therefor; that Dewey C. White in his application dated May 5, 1934, warranted that he had not in the last five years suffered any bodily disease or infirmity which were untrue, in that he had suffered from a severe attack of influenza in March, 1933, and since that time and up until the time of his death, the said Dewey C. White suffered from epilepsy; that appellant would not have issued its certificate had it known of the physical condition of Dewey C. White, and on discovering the truth of the matter on or about October 26, 1936, it had tendered and offered to return to plaintiff the total amount of premiums or assessments paid on the certificate or policy, and that such tender had been refused. For a fourth defense, that its certificates are issued in further consideration of the payment of monthly installments of premiums on or before the last day of each month during which said certificate is in

force; that the said certificate provides if the member fails to make such payment on or before the last day of the month he shall thereby become suspended, and his beneficiary certificate shall be void, and that should a person be suspended more than three and less than six months, he may again become a member only if in good health by warranting that he is in good health and paying all sums which he should have paid had he remained a member, and only then if said person shall remain in good health for thirty days following: That the said Dewey C. White failed to pay when due the monthly installment of assessments for the month of July, 1935, on or before August 1, 1935, or any installment coming due thereafter before December 21, 1935, on which last-mentioned date he made application to again become a member, in which application he warranted that he was in sound bodily health and free of any disease, injury, or impairment, and that he had not during the last three years suffered from any mental or bodily infirmity; that the warranties therein made were untrue, and that at the time of the application to again become a member, he was subject to epileptic seizures and that within thirty days after said application he suffered an epileptic seizure; that had the truth of said matter been known to appellant, the certificate would not have been reinstated; that when the truth became known to appellant it tendered and offered to return to respondent all premiums and assessments paid to reinstate said certificate and all paid thereafter. For a fifth defense, that Dewey C. White failed to pay when due his monthly installment for the month of March, 1936, on or before April 1, 1936, or to pay the installment for the month of April on or before May 1, 1936; that thereupon by the terms of the said certificate it became void and of no effect; that thereafter, on or about May 16, 1936, the said Dewey C. White forwarded to the financial secretary of the camp of which he was a member, a postal money order for the monthly assessment for the months of March, April and May, 1936; that the said certificate pro-

vides, among other things, that any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health thereafter for thirty days; that Dewey C. White was not in good health at that time, being subject to epileptic seizures and that he died only two days after the forwarding of the money order; that appellant had tendered a return of the three months' assessments to the respondent, and that she has refused to accept a return of the premiums, and that appellant has always been, and still is, ready and willing to return said premiums to respondent.

On the face of the certificate of insurance is the following: "This Certificate is issued and accepted subject to all the conditions set forth herein and on the reverse side hereof, and the provisions of the Constitution, Laws and By-Laws of the Association. * * * If the payments required by the Constitution, Laws and By-Laws of the Association are not paid by the member, this certificate shall be null and void. Should this certificate become void for any cause, acceptance of any payment from or for the member, or other act by any Camp Officer or member of the Association thereafter, shall not operate as an estoppel or as a waiver of the terms of this contract."

Among the conditions on the back of the policy is the following:

"Second. If the admission fees, dues and assessments required of the person named in this certificate are not paid to the Financial Secretary of his Camp as required by the Constitution and Laws of this Association, the certificate shall be null and void."

"Fourth. No legal proceedings for recovery under this certificate shall be brought within ninety days after receipt of proof of death by the Secretary of the Association, and no suit shall be brought upon this certificate unless said suit is commenced within one year from the date of death."

The following provisions of the constitution, laws and by-laws of appellant were admitted in evidence:

"Sec. 64. A person who becomes suspended for non-payment of assessments or installment of assessment is not entitled to any benefits of this Association, nor shall he receive the password or participate in any of the business or social proceedings of the Camp to which he had belonged.

## Again Becoming a Member

"Sec. 65. Any person who has become suspended because of the non-payment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the Association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such installments when so paid after he has become suspended for nonpayment of assessments shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the Secretary of the Association shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. *Provided,* that the receipt and the retention of payment of such installments of assessments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever.

"Sec. 66 (a) The retention by the Association of any installment of assessment paid by or for any person after he

has become suspended in order to again make him a member, shall not constitute a waiver of any of the provisions of this Constitution, Laws and By-Laws, or an estoppel upon the Association.

"(b) Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installment of assessment shall be a warranty that such person is at the time in good health and that if the warranty is not true the certificate shall be null and void.

"Sec. 67. Should a person be suspended more than three and less than six months, if in good health, by delivering to the Financial Secretary a certificate of good health signed by himself, in which he shall warrant that all the statements contained therein are true, and by the payment of all sums which he should have paid had he remained a member, including the current installment of assessment, and upon receipt and acceptance of said health certificate and the money by the Secretary of the Association, and if said person shall remain in good health for thirty days following, he shall again become a member."

At the conclusion of the testimony, appellant moved for a directed verdict, which was refused. The questions raised by this appeal, as stated by appellant, are as follows:

"1. Did the Court err in refusing to direct a verdict for the defendant upon the ground that the insured became suspended from all benefit under his certificate of insurance in July, 1935, and failed to become reinstated because he was not in good health at the time he attempted to become reinstated in December, 1935, and did not remain in good health for thirty days thereafter?

"2. Did the Court err in refusing to direct a verdict for the defendant on the ground that the uncontradicted testimony shows that the insured had become suspended and the certificate had become null and void before the date of his

death, he having failed to pay the assessment for the month of March, 1936, and his attempt to reinstate in May having failed because he was not then in good health and did not remain in good health for a period of thirty days thereafter?

"3. Did the Court err in refusing to direct the verdict for the defendant when the certificate of insurance provided that no suit should be brought within ninety days of receipt of proofs of death by the secretary of the association, and the uncontradicted testimony showed that the same was commenced within ninety days of that date?"

Appellant, after the bringing of this suit, tendered to the beneficiary all payments made by the insured from the inception of the contract, including the dues paid two days before his death, upon the theory that it was never in effect, due to the warranty contained in the application for the policy that the insured had not in the last five years suffered any bodily disease or infirmity, which appellant alleges to be untrue, in that he had suffered from a severe attack of influenza in March, 1933, since which time and until his death he suffered from epilepsy. However, upon the trial of the case, motion for directed verdict was confined to the periods from July, 1935, to December, 1935, and for March and April, 1936.

> In discussing this case, we will keep in mind that salutary principle that the law abhors forfeitures, and will seize upon slight evidence to prevent one.

The major questions involved in this appeal are: (1) Was there evidence which should have been submitted to the jury on the issue that there was a breach of the warranty of good health when the insured became reinstated in December, 1935, and again in May, 1936? And (2) was there evidence of waiver which should have been submitted to the jury on the isue of breach of the warranty of good health?

In the recent case of *Kizer v. Woodmen of the World,* 177 S. C., 70, 180 S. E., 804, 807, the legal effect of a warranty, and the distinction between warranties and representations,

is set forth in the following language: "The difference between warranties and representations is often very vital. Construed as a warranty, the falsity of the statement amounts to an express breach of the contract, regardless of the good faith and honest purpose of the insured, and the statement does not have to be material, it has been held in some cases; construed as a representation, the falsity of the statement may render the contract voidable when it is shown to have been material to the risk and knowingly made. A representation is usually made in proposing a contract; a warranty is made when it 'is a part of the completed contract, either expressly inserted therein, or appearing therein by express reference to statements expressly made a part thereof.' 3 Joyce, Ins. (2d Ed.) #· 1882, and cases cited thereunder."

See, also, *Nix v. Woodmen of the World,* 180 S. C., 153, 185 S. E., 175, 178.

Dr. W. C. Mays, a witness for the appellant, testified that he had known the insured some twelve or fourteen years, and that he was called to attend him professionally in the spring of 1933, when he found insured in a coma, and his diagnosis was influenza and some cerebral trouble, which later proved to be an encephalitis; that encephalitis is an inflammatory condition of the membrane or covering of the brain, caused or brought on from some infection like flu or pneumonia, some germ condition; that this condition is serious. At that time the insured was transferred to the Anderson County Hospital and was treated by Drs. J. R. and C. H. Young. That he saw insured professionally when he came from the hospital, but not again until the latter part of the year 1934 or 1935, in December of one of those years. That he was called to see the insured because he had had a convulsion and the family got uneasy and sent for him. That the cause of this convulsion was secondary to this encephalitis that he had, probably due to some adhesions that created a certain amount of pressure and gave him epileptic seizures. That the insured was afflicted with epilepsy following in-

fluenza, complicated by encephalitis. That the epilepsy was due to some adhesion from membranes that had adhered to the brain that created some amount of pressure, interfering with the circulation. That insured suffered from chronic epilepsy and had light attacks of it from time to time, and that this type of epilepsy, in his opinion, was not curable, and is considered a serious trouble. That the cause of insured's death, according to his diagnosis, was cerebral hemorrhage—hemorrhage of the brain. On cross examination, Dr. Mays testified that the insured worked regularly and was a hard worker; that the insured was seized on a Sunday night about 2, 3 or 4 o'clock, and was unconscious until that afternoon, when he died; that the cerebral hemorrhage could be brought on by overeating, and that overeating will make one have a seizure; that the insured was a man of good reputation for truth and veracity and for honest and fair dealing among his fellow men.

Dr. C. H. Young, a witness for appellant, testified that he saw the insured professionally in March, 1933, when he was admitted to Anderson County Hospital and diagnosed his trouble as encephalitis; that there are light cases and heavy cases of encephalitis, but it is regarded as a rather serious malady, serious ailment; that encephalitis is an inflammation of the brain and that epilepsy is a condition characterized by convulsions; that epilepsy could be caused by and grow out of encephalitis, convulsions grow out of it, and sometimes it is termed epilepsy and sometimes it isn't; that if convulsions or seizures continue for a length of time, for a year probably, it would usually be called epilepsy. Epilepsy is a serious trouble, in that it usually tends to get worse, after a time possibly followed by degenerative changes in the brain. That a man who has epilepsy is not in good health, and usually epilepsy is not curable. That there is not necessarily any connection between a chronic case of epilepsy and death from cerebral hemorrhage—there might be some connection or there might not.

Alvin Glenn, a witness for respondent, testified that he lived very close, within four or five hundred yards, of the insured during the years 1934 and '35; that the insured was a hard-working man, and he knew of no one who worked any harder during those years; that he had never seen him have "any of his spells" but had heard people say he had them.

In the case of *Nix v. Sovereign Camp, W. O. W., supra,* it is stated: "The term 'good health' when used in a policy of life insurance, means that the applicant has no grave, important, or serious disease, and is free from ailment that seriously affects the general soundness and healthfulness of the system."

As stated in the *Nix case,* the above statement of the rule is quoted with approval in *Cooley v. Metropolitan Life Insurance Company,* 153 S. C., 280, 150 S. E., 793. And in the same case, the following quotation is given and adopted from 37 C. J., 404: "The actual and not merely the apparent health of the applicant is controlling in determining whether he was in good health."

Of course, as this Court has heretofore decided, the term "good health" or "sound health" does not mean that a person is in a condition of perfect health, but such terms are bound to be given some weight, and where a person has a malady, condition, or disease which members of the medical profession are agreed is serious, and the history of such malady, condition, or disease is that it is incurable, then the mere fact that such person so affected and infected continues to be a hard-working person cannot produce any reasonable inference that such person is in good health or sound health, within the purview of the words as used in a policy of life insurance.

The facts in the *Nix case* are very analogous to the case at bar, but with this material difference: In the *Nix case,* the insured had been examined by a physician chosen by the insurance company, and under a long line of cases in this State

cited in that opinion, the principle is well established that an examination of the insured by a physician chosen by the insurance company, is some evidence of one or two things: Either that the alleged disease did not exist, or that its existence was known to and waived by the insurer.

Under the terms of the insurance contract, the insured agreed to pay monthly, assessments or dues for his insurance, $1.07, and if not paid within the month for which said dues or assessments were to cover, the payment thereof thereafter was accompanied by a warranty that the insured was in good health and that he would remain in good health for thirty days after such attempt to again become a member, and that the retention of the assessments or dues by the insurer would in no wise operate as a waiver of the provision of the warranty of good health. The contract further provided that if a person should be suspended more than three and less than six months, and if in good health, he could pay all sums which he should have paid, but must deliver to the financial secretary of the association a certificate of good health signed by himself, and that if the above is done and the member shall remain in good health for thirty days following, he shall again become a member.

When Dewey C. White, the insured, paid his assessments or dues in December, 1935, for arrearages for the months of July, August, September, October and November, 1935, and no certificate of good health was required, and the failure to furnish such certificate never having been called to his attention, there was undoubtedly a waiver by appellant of this provision, and sufficient evidence to submit to the jury on the question of waiver of good health, and therefore the Circuit Judge was correct in refusing the motion for directed verdict on the ground that the insured had failed to become reinstated in December, 1935. The fact of the acceptance and retention of the assessments within itself is not evidence of waiver, for the reason that under the contract of insurance the insured had the right to pay these dues or assessments

upon furnishing a certificate, and as aforementioned, it is specifically agreed in the contract of insurance that the acceptance and retention of dues would not constitute evidence of a waiver.

We now come to the second question raised by the appeal. The insured did not pay the premium or assessment for the month of March, 1936, within that month, nor for the month of April, within that month, but on the 16th day of May, 1936, procured a post office money order in the sum of $3.21, which he mailed to the financial secretary of the camp to which he belonged and which was received by the financial secretary on the 18th day of May, 1936, the day of the death of the insured. Under the contract of insurance the insured had the right to pay up these dues and become reinstated, conditioned, however, upon the warranty that he was in good health at the time of the payment of same and would remain in good health for a period of thirty days. The insurer, appellant herein, had the right to accept said dues—more than that, was compelled to accept said dues or assessments, but was protected by the contract to the extent that the acceptance and retention by it of these dues was not a waiver of the condition that the insured was in good health and would remain in good health for a period of thirty days thereafter. Except for the provision in the contract, the acceptance and retention of these dues would be some evidence of waiver on the part of appellant; and the acceptance and retention of the assessments, dues or premiums from the insured, paid irregularly and after the month for which they were due, from the time that the insured became a member of appellant, might be some evidence of waiver on the part of appellant, except for the fact that the insured had the right to pay when he did and become reinstated subject to the provisions of the contract, and appellant could not have refused these payments.

Section 65 of the constitution, rules and by-laws of appellant, made a part of the contract of insurance, provides

that when a person has become suspended for the nonpayment of dues and pays up such dues, the appellant may receive and retain same without waiving any of the provisions of the contract until such time as the secretary of the association shall have received *actual, not constructive* or *imputive,* knowledge that the person was not in fact in good health when he attempted to again become a member. The uncontradicted testimony in this case is that the dues paid by the insured were tendered to the beneficiary (respondent), within a reasonable time, under the circumstances, after appellant had knowledge of the fact that the insured (Dewey C. White), was not in good health when he undertook to become reinstated.

We are unable to find a scintilla of evidence of waiver in the receipt and retention of the dues paid in May, 1936, for the months of March, April and May of that year.

Ordinarily, the issue of waiver is a question of fact to be passed upon by the jury unless only one reasonable inference can be drawn from the testimony, in such case, it becomes a question of law, and one to be settled by the Court.

The holding in this case with reference to evidence of waiver in no wise does violence to the opinion of this Court in the case of *Funderburk v. Sovereign Camp, W. O. W.,* 179 S. C., 80, 183 S. E., 462, since in that case a custom had been established by the clerk of the local camp to which Funderburk belonged, of even dating the receipts a month after the dues were paid, and the said clerk had informed the members that it was all right to pay their dues during the month following the month for which they were payable. Further than this, at this camp it was the custom to send members notice that they were suspended and even when a member was known not to be in good health (sick), it was the practice to accept his dues during the month following for which they were due, and forward to headquarters. Aside from that, there was a direct conflict in the testimony as to

whether or not Funderburk had paid his assessments or dues within the month for which they were due.

In the case at bar, there was no such custom or practice so far as the testimony discloses, and there was no evidence that the clerk or financial secretary of the lodge or camp in which the insured carried his membership, had any knowledge, or information which would have put him on notice that the insured was not in good health.

The further position of respondent is that when appellant, well knowing that the dues of the insured for March and April had not been paid for until in May, and that the insured had died on the day these dues were received by the financial secretary of the camp in .which the insured had his membership, forwarded blank forms in order that the beneficiary (respondent) could file proof of death of the insured, and procured from her as a part of the proof of death the certificate of insurance which it had issued, and thus put her to the expense and trouble of furnishing such proof, that this was some evidence of waiver of the provision relating to "good health" in the contract of insurance, and cites as authority therefor *Whaley v. Insurance Co.,* 124 S. C., 173, 117 S. E., 209, and several other insurance cases.

When the wife and beneficiary under the policy notified the clerk or financial secretary of the camp in which the insured had carried his membership of his death, the said clerk or financial secretary, in acknowledging receipt of the notice, stated that it was very doubtful whether or not they, the Sovereign Camp, would approve the claim.

The blank forms for the proof of death furnished by appellant, contained the following at the top thereof.: "The furnishing of these blanks by the Association on which to make proof of claim shall not be an acknowledgment of any liability of said Association."

"Before an insurance company can be held to have waived a forfeiture provided for in the contract, it must appear: (1)

That it had knowledge of the act of the insured which worked a forfeiture; (2) that it entered into negotiations with the insured which expressly or impliedly recognized the continued validity of the policy; (3) that the insured was induced by such negotiations, of the character stated, or by conduct of the company, to incur expense or trouble under a reasonable belief that the loss would be paid, the forfeiture waived." *Gunter v. Philadelphia Life Ins. Co.,* 130 S. C., 1, 15, 16, 125 S. E., 285, 290. See, also, *Corley v. Atlantic Life Ins. Co.,* 179 S. C., 95, 183 S. E., 596.

The only testimony in the record on the question of knowledge of appellant of the lack of good health of the insured, is to the effect that this information was not in its possession until after the commencement of this action, and certainly not before the filing of proof of death; and the letter of the financial secretary of the local camp and the statement at the top of the proof of death forms were certainly not calculated to imbue respondent with a reasonable belief that the policy would be paid—that any cause for forfeiture would be waived. We have searched this record in vain for some slight evidence of waiver in an effort to prevent the forfeiture of this policy of insurance. But as stated by Mr. Associate Justice Bonham, in writing the opinion of the Court in the case of *Perry v. Sovereign Camp, W. O. W.,* 172 S. C., 456, 174 S. E., 397, 401, while "it is true that the law abhors a forfeiture, but it does not assume to 'prevent' one unless there is a foundation in fact or law to justify it"; and we should not "lose sight of the fact that this fraternal order is made up of a great many thousands of persons whose insurance rights can only be protected and saved by the enforcement by the Sovereign Camp of the rules, the by-laws, and the constitution of the order which the members themselves have adopted."

In view of the above conclusions, it becomes unnecessary to pass upon the third question—the premature commencement of this action. We, however, call attention to the case

of *Young, as Receiver, v. Peoples Bank et al.*, 163 S. C., 57, 161 S. E., 324.

The case is remanded, with instructions to enter judgment in favor of appellant, under Rule 27.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER (dissenting) : I am unable to agree with the holding that the judgment of the lower Court should be reversed. It is true, the provisions of the policy required the premiums to be paid monthly, and in the case of reinstatement of the policy the rules required that the company should be furnished with a certificate of good health. Under my view of the testimony, these requirements were waived by the company, or at least there was testimony introduced in the record tending to show that they were waived, and the company was, therefore, not in a position to declare the policy void because of the payments of premiums not having been made promptly, and because of the certificate of good health not having been furnished the company at the time payments were made. So far as the record discloses, no complaint was made to the insured because of the payments not having been made strictly according to the requirements of the policy, and because no certificate of good health was furnished. For instance, the premiums due for the months of July, August, September, October and November, 1935, were not paid until the month of December of that year and no certificate of good health on the part of the insured was furnished at all, although the money received by the company in payment of the premiums for the several months mentioned was retained. Was it the intention of the insurance company to lead the insured to believe that he would not be held strictly to the provisions of the policy in making payment of premiums and as to furnishing a certificate? That was a jury question. Following this custom, the premiums due for the months of March, April and May, 1936, were not paid until May 16, 1936. The insured died May 18, 1936.

It is true, after that time the company offered to return all of the premiums and sent a check for that purpose. However, nothing was included for interest on the money that the company had received from the insured as premiums thereon. As I view the case, the trial Judge was not in a position to grant the defendant's motion for direction of a verdict on the several grounds mentioned in the defendant's motion.

In connection with the views herein expressed, I wish to call attention to the opinion in the recent case of *Tinsley v. Prudential Insurance Company of America* (S. C.), 191 S. E., 307.

I therefore think that the judgment of the lower Court should be affirmed, and I most respectfully dissent from the conclusion reached in the leading opinion.

### ON REHEARING

*Per curiam.*

Rehearing denied.

MR. JUSTICE CARTER: For the reasons given in my dissenting opinion herebefore filed, I think a rehearing should be granted.